## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| The Clare at Water Tower, | ) | Case No.  11-46151 |
| | ) | |
| Debtor. | ) | Honorable Susan Pierson Sonderby |
| | ) | |
| | ) | Hearing Date:  December 20, 2011, 10:30 a.m. (CST) |

## FINAL ORDER (I) AUTHORIZING
## DEBTOR TO OBTAIN POSTPETITION FINANCING
## ON A SENIOR SECURED SUPERPRIORITY BASIS PURSUANT TO
## 11 U.S.C. §§ 105, 361, 362, 363, AND 364, (II) GRANTING RELATED RELIEF

Upon the motion (the  Motion"), dated November 15, 2011, of **The Clare at Water Tower** (the "Debtor"), as debtor and debtor in possession, in the above-captioned case (the "Chapter 11 Case") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Bankruptcy Rules"), seeking, among other things, entry of an interim order (the "Interim Order")[1] and a final order (the "Final Order"):

(i) authorizing the Debtor to obtain postpetition financing (the "Financing") in the form of a multiple draw term loan made available to the Debtor in a principal amount of up to $12,000,000 (the "Facility") with superpriority claims and first priority priming liens senior to any prepetition or

---

[1] The Interim Order was entered by this Court on November 17, 2011 [Docket No. 67].

postpetition liens, pursuant to sections 105, 361, 362, 363, and 364 of the Bankruptcy Code from Redwood Capital Investments, LLC or its designee (the "DIP Lender");

(ii)    authorizing the Debtor to execute and deliver final documentation substantially in the form of the Senior Secured Super-Priority Debtor-in-Possession Loan Agreement (attached to the Interim Order as Exhibit A, the "DIP Credit Agreement")[2] and any other document requested by the DIP Lender in connection with the Financing including, without limitation, security agreements, pledge agreements, mortgages, financing statements, deeds of trust and other security documents (along with the DIP Credit Agreement and all of the forgoing whenever executed, collectively, the "DIP Documents");

(iii)    scheduling a final hearing (the "Final Hearing") pursuant to Bankruptcy Rules 4001(b), (c) and (d); and

(iv)    granting related relief;

the Court having considered the Motion, having examined the exhibits attached thereto, and having completed the Interim Hearing (defined below) and Final Hearing (defined below) as provided for under section 364 of the Bankruptcy Code, Bankruptcy Rule 4001(c), and applicable Local Bankruptcy Rules, and finding the Debtor provided notice as set forth below to all necessary parties and that no further notice is required:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the DIP Credit Agreement.

A.   **Petition Date**.  Commencing on November 14, 2011 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois (the "<u>Bankruptcy Court</u>" or this "<u>Court</u>"). The Debtor has continued in the management and operation of its business and property as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case.

B.   **Jurisdiction**.  This Court has core jurisdiction over the Chapter 11 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004 and 9014 and the Local Bankruptcy Rules.

C.   **Notice**.  Due and appropriate notice of the Motion, the relief requested therein and the Final Hearing having been served by the Debtor on:  (i) the Office of the United States Trustee for the Northern District of Illinois; (ii) the Debtor's 20 largest unsecured creditors on a consolidated basis; (iii) counsel to the DIP Lender; (iv) counsel to the indenture trustee (the "<u>Bond Trustee</u>") with respect to certain bonds (collectively, the "<u>Bonds</u>") issued either by the Debtor or for the benefit of the Debtor by the Illinois Finance Agency (the "<u>Issuer</u>") pursuant to certain Trust Indentures between the Debtor or the Issuer, as the case may be, and the Bond Trustee dated November 1, 2005 and July 1, 2010; (iv) counsel to Bank of America, N.A. (the "<u>Bank</u>"), the agent for the providers of certain letters of credit backing certain of the Bonds; (v) counsel for the majority holders of the Debtor's fixed rate bonds; (vi) the official committee of unsecured creditors; and (vii) any additional known lienholders whose liens are being primed

NGEDOCS: 1861355.5

under the Financing in compliance with Bankruptcy Rule 4001(b) and (c) and the Local Bankruptcy Rules.

D.    **Opportunity to be Heard**.    Pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion was held before this Court to consider entry of an interim order on November 16, 2011 and a final hearing ("Final Hearing") on the Motion was held before this Court to consider entry of this Final Order on December 20, 2011.

E.    **Disposition**.    The Motion is granted on a final basis in accordance with the terms of this Final Order.    Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled for purposes of this Final Order.

F.    **Lender's Protections**.    The DIP Lender is willing to lend money and provide other financial accommodations to the Debtor only on the terms and conditions and with the protections provided herein and in the DIP Documents and is relying on such terms, conditions, and protections in agreeing to lend money and provide financial accommodations to the Debtor hereunder.

G.    **Immediate Entry of the Order**.    The Debtor has requested that this Final Order become immediately effective and enforceable upon entry, notwithstanding any provisions that may apply in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure.    The Debtor has demonstrated good cause for the entry of this Final Order and for this Final Order to become immediately effective and enforceable upon entry.    Among other things, entry of this Final Order and the immediate effectiveness and enforceability of this Final Order upon entry will minimize the disruption of the Debtor's business operations and permit the Debtor to satisfy its operating expenses, will

increase the possibilities for confirmation of a successful chapter 11 plan for the Debtor, and is in the best interests of the Debtor, its creditors, and the Debtor's bankruptcy estate. The terms of the borrowings and other financial accommodations authorized hereby are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties.

H.    **Findings Regarding the Financing**.

(i)    Good cause has been shown for the entry of this Final Order;

(ii)    The Debtor has an immediate need to obtain the Financing, to the extent set forth in the Budget (as defined in the DIP Credit Agreement), to (a) fund the postpetition operating expenses of the Debtor incurred in the ordinary course of business and (b) pay certain other costs and expenses of administration of the Chapter 11 Case. The access of the Debtor to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtor and to a successful reorganization of the Debtor;

(iii)    The Debtor currently is unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtor granting to the DIP Lender, subject to the

5

Carve Out (as defined below), the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Final Order and in the DIP Documents;

(iv)     The terms of the Financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration;

(v)     The Financing has been negotiated in good faith and at arm's length among the Debtor and the DIP Lender, and all of the Debtor's obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, all loans pursuant to the DIP Documents, and any other expenses or obligations under the DIP Documents (all of the foregoing collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Lender and its affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Obligations, the DIP Liens (as defined below) and the Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise;

(vi)     Entering into the Financing and the DIP Documents reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties; and

6

(vii)    The Debtor has requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief sought by this Final Order, the Debtor's estate will be immediately and irreparably harmed.    Consummation of the Financing in accordance with this Final Order and the DIP Documents is therefore in the best interests of the Debtor's estate consistent with its fiduciary duties.

## ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.    **Authorization of the Financing and DIP Documents.**

(i)    The Debtor is hereby authorized to execute and enter into the DIP Documents — on a final basis and to the extent consistent with the terms of the Final Order and the DIP Documents — including, without limitation the execution, delivery and performance of the DIP Credit Agreement, any notes, security and pledge agreements, mortgages contemplated thereby and the other agreements referred to as and in the DIP Documents.

(ii)    The Debtor is hereby authorized to execute, deliver and perform one or more amendments, waivers, consents or other modifications to and under the DIP Documents not inconsistent with the terms of this Final Order by filing notice of such amendment, waiver consent or other modification with this Court. Following the filing of such notice, any party in interest may contest such amendment, waiver, consent or other modification by filing a motion (an "Amendment Challenge") with this Court within fourteen (14) days of being provided notice of such amendment, waiver, consent or other modification. Subject to the convenience of this Court's calendar, a hearing on any Amendment

Challenge shall be held within five business days of the date that the Amendment Challenge is filed. If an Amendment Challenge is not timely filed and served and a hearing is not timely sought, or if the relief sought in the Amendment Challenge is denied, the amendment, waiver, consent or other modification shall become immediately effective.

(iii)    The Debtor is hereby authorized to borrow money pursuant to the DIP Documents, and the Debtor is hereby authorized to incur indebtedness up to an aggregate principal amount of $12,000,000 (including the Commitment Fee earned and paid upon the entry of the Interim Order) (the "Final Amount"), which shall be used only as permitted under the DIP Documents and in accordance with the Budget (as defined in the DIP Credit Agreement), and to enter into any and all other and further agreements and arrangements in connection therewith and to pay interest and expenses and incur DIP Obligations all in accordance with this Final Order and the DIP Documents, including, without limitation, the non-refundable payment to the DIP Lender of the fees referred to in the DIP Documents and reasonable costs and expenses as may be due from time-to-time, specifically including, without limitation, fees and expenses of the professionals retained by the Lender provided for in the DIP Documents.

(iv)    The Debtor shall furnish the Budget to the DIP Lender in accordance with the terms of the DIP Documents, and the Debtor is authorized to submit a Budget in connection with an imminent Asset Sale (as such term is defined in the DIP Credit Agreement) (the net cash proceeds of which will be sufficient to pay the outstanding obligations to the DIP Lender in full) in

NGEDOCS: 1861355.5

contemplation of an Advance of Loan Proceeds (as such term is defined in the DIP Credit Agreement) for the purpose of paying (or reserving for subsequent payment), when allowed, the accrued and unpaid fees and expenses of professionals retained in the Chapter 11 Case (including, without limitation, professionals retained by the Debtor (other than ordinary course professionals) or by any committee appointed in the Chapter 11 Case) and/or the accrued and unpaid fees and expenses of the DIP Lender's professionals.    Approval or disapproval of any Budget shall be governed by the terms of the DIP Credit Agreement.  The Court hereby expressly approves and authorizes the Debtor to reserve or escrow any such Advance of Loan Proceeds drawn in respect of all accrued and unpaid fees and expenses of such professionals.

(v)    In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtor's performance of its obligations under the Financing and under the DIP Documents.

2.    **Valid, Binding, Non-Avoidable Obligations**.  Upon execution and delivery of the DIP Credit Agreement and the other DIP Documents, such DIP Documents shall constitute and represent valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor in accordance with their terms and subject to the terms of this Final Order for all purposes during the Chapter 11 Case, any subsequently converted case of the Debtor under

NGEDOCS: 1861355.5

chapter 7 of the Bankruptcy Code or after the dismissal of the Chapter 11 Case. No obligation, payment, right, transfer or grant of security or lien under the DIP Credit Agreement, the other DIP Documents or this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

3.    **Superpriority Claims**.

(i)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations approved under this Final Order shall constitute allowed senior administrative expense claims against the Debtor (the "Superpriority Claims") with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and postpetition property of the Debtor and all proceeds

thereof (provided, however, that no party shall have recourse to Avoidance Actions (as defined below) and proceeds thereof pursuant to this Final Order), subject only to the payment of the Carve Out to the extent specifically provided for herein.

(ii)    The DIP Lender shall have the right to credit bid up to the entire amount of the Superpriority Claim and/or bid in excess of the amount of the Superpriority Claim, if necessary, in any sale of Collateral and shall have standing with respect to any such sale or hearing related thereto.

(iii)    In addition to the fees, costs, charges and expenses authorized under the DIP Facility, the Superpriority Claim shall expressly include all of the DIP Lender's reasonable attorneys' and other professionals' fees arising from or related to (a) the Financing, (b) all proceedings related to the DIP Collateral (as defined below); (c) all proceedings in connection with the interpretation, amendment, modification, enforcement, enforceability, validity or carrying out of the DIP Credit Agreement or this Order at any time; and (d) all reasonable expenses, costs and charges arising in connection therewith or related thereto. The Lender shall be entitled to charge the Debtor's account or receive reimbursement thereof, in either case as a Superpriority Claim, on ten days' written notice to the Notice Parties (as defined in the Interim Order) (the "Fee Notice") without application to or further order from the Court.

4.    **DIP Liens**. As security for the DIP Obligations, effective and perfected upon the date of, and through, this Final Order and without the necessity of the execution, recordation of filings by the Debtor of mortgages, security agreements, control agreements, pledge agreements,

financing statements or other similar documents, or the possession or control by the DIP Lender

of, or over, any DIP Collateral (defined below), the DIP Lender shall have a DIP Lien (as

defined below) on the DIP Collateral, subject, only in the event of the occurrence and during the

continuance of an event of default under the DIP Documents (an "Event of Default"), to the

payment of the Carve Out (defined below):

      (a)    DIP Collateral.  The DIP Lender shall have DIP Liens on all assets

(tangible, intangible, real, personal and mixed) of the Debtor, whether now owned or

hereafter acquired, including, without limitation, cash and cash equivalents, rights in

deposit accounts, management contracts, accounts, inventory, equipment, receivables,

capital stock or other ownership interests in subsidiaries, investment property,

instruments, chattel paper, insurance proceeds, real estate, leasehold interests, contracts,

patents, copyrights, trademarks, and other general intangibles, and all products and

proceeds thereof, subject only to the Carve Out (collectively, all of the foregoing is

defined herein as the "DIP Collateral").  For the avoidance of doubt, the DIP Collateral

shall also include (i) all Resident Deposits (whether existing or new) and (ii) all other

accounts of Borrower, and all proceeds and products of all of the foregoing.

Notwithstanding the foregoing or any other terms of this Order or any Loan Document,

the DIP Collateral shall not include (i) Trustee-Held Funds (as such term is defined in the

DIP Credit Agreement), (ii) Cash Collateral (as such term is defined in the DIP Credit

Agreement) and (iii) the Debtor's claims and causes of action that arise as of the Petition

Date under chapter 5 of the Bankruptcy Code including sections 544, 545, 547 and 548

and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and

property received thereby whether by judgment, settlement or otherwise (collectively,

"Avoidance Actions") except that (1) actions under section 549 of the Bankruptcy Code (and the proceeds thereof) shall be included in the DIP Collateral, and (2) any lien or security interest avoided pursuant to sections 550, 551 and/or 552 of the Bankruptcy Code with respect to actions under section 549 of the Bankruptcy Code shall be subject to the liens and claims of the DIP Lender.

(b)    First Priority Priming Lien on Collateral.  **The obligations owing to the DIP Lender under the Facility shall be secured by a perfected security interest pursuant to section 364(c)(2), section 364(c)(3) and section 364(d) of the Bankruptcy Code with a valid, binding, continuing, enforceable, fully-perfected, first priority priming lien that is senior to any and all security interests in and liens on the DIP Collateral (which is expressly senior in priority to, without limitation, all security interests and liens of the Bond Trustee) (collectively, the "DIP Liens").  The DIP Liens shall be senior in priority to any lien, right of setoff or recoupment or any similar right (whether arising by common law, statute or contract) of any party, including, without limitation, the Bond Trustee, regardless of whether such party is in possession of the DIP Collateral or otherwise.**  Notwithstanding anything herein, the DIP Liens shall be subject to the Carve Out, but, for the avoidance of doubt, payment of the Carve Out shall not reduce the amounts payable to the DIP Lender hereunder or under the DIP Documents.  Notwithstanding the foregoing, the DIP Liens will be subordinate only to the rights of residents to the Resident Deposits pursuant to any agreement or order requiring Borrower to escrow or segregate any Resident Deposits for the benefit of the residents.  Without limiting the forgoing, the DIP Lender has a mortgage upon the Debtor's leasehold estate in the Leased Premises (as such term is defined in that certain

Lease Agreement between Loyola University of Chicago and The Clare at Water Tower, dated as of November 2, 2005 (including any amendments thereto, the "Lease")) and the Debtor's interest in the Tenant's Improvements (as defined in the Lease) to secure the repayment of the amounts financed under the DIP Facility.

5.    **Carve Out**.  The carve out for certain expenses and professional fees incurred during the pendency of the Chapter 11 Case (the "Carve Out") means (i) all accrued and unpaid fees that arise pursuant to 28 U.S.C. § 1930, plus (ii) the payment of allowed and unpaid fees of professionals retained in the Chapter 11 Case (other than ordinary course professionals), in an amount not to exceed $250,000 (including, and not in addition to, any carve out amounts set forth in any order approving the use of any prepetition secured creditor's cash collateral), that are incurred after the delivery of a written notice of the occurrence of one or more Events of Default, plus (iii) any and all allowed accrued but unpaid fees and expenses owed to professionals retained in the Chapter 11 Case (regardless of when allowed), to the extent consistent with the Budget, that were accrued on or before the date of delivery by the Lender to the Debtor of a written notice of the occurrence of one or more Events of Default in the amount not to exceed those fees and expenses incurred through the date that notice of the default under the Facility was received.  For the avoidance of doubt, notwithstanding anything else to the contrary in this Order or the Loan Documents, the DIP Lender shall not be obligated to lend more than a total of $12,000,000 inclusive of the Carve Out after entry of this Final Order.

6.    **Protection of DIP Lender's Rights**.

(a)    None of the DIP Collateral shall be subject to any liens, claims and encumbrances, except for those liens, claims and encumbrances expressly permitted under the DIP Documents or this Final Order;

14

(b)     Except as otherwise provided in this Order, so long as there exist DIP Obligations which have not been indefeasibly paid, no party may take any action to exercise remedies against any DIP Collateral without further order of the Court; and

(c)     **On five (5) business days notice to the Debtor, Loyola University of Chicago ("Loyola"), the Bond Trustee, the Bank, the United States Trustee and any official committee appointed in the Chapter 11 Case, upon the occurrence and continuation of an Event of Default, the automatic stay provisions of section 362 of the Bankruptcy Code will be deemed vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies under the DIP Documents absent an order of this Court to the contrary.**  Subject to the payment provisions described below, in no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or otherwise.  The delay or failure to exercise rights and remedies under the DIP Documents or this Final Order by the DIP Lender shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the applicable DIP Documents.  The Debtor waives and shall not be entitled to any right of setoff against the DIP Lender relating to the DIP Obligations.

7.     **Limitation on Charging Expenses Against Collateral**.  **So long as, and to the extent that, any DIP Obligations remain outstanding, no costs or expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral pursuant to section 506 (c) of**

the Bankruptcy Code or any similar principle of law without the prior written consent of

the DIP Lender, and no such consent shall be implied from any other action, inaction, or

acquiescence by the DIP Lender.

8.    **Monitoring of DIP Collateral**.  In the event the Debtor has defaulted under the

DIP Credit Agreement, the DIP Lender reserves the right, in consultation with the Debtor but in

the DIP Lender's sole discretion, to retain expert consultants, financial advisors or other

professionals at the expense of the Debtor, which consultants and advisors shall be given

reasonable access for purposes of monitoring the business of the Debtor and the value of the DIP

Collateral.

9.    **Financial Reporting**.  The Debtor shall provide the DIP Lender with financial

and other reporting as described in the DIP Documents.

10.    **Perfection of DIP Liens**.

(a)    The Debtor and the DIP Lender are hereby authorized, but not

required, to file or record financing statements, trademark filings, copyright

filings, mortgages, notices of lien or similar instruments in any jurisdiction, or

take possession of or control over, or take any other action in order to validate and

perfect the liens and security interests granted to them hereunder; provided

however, the Debtor shall perform any act in furtherance thereof if requested by

the DIP Lender.  Whether or not the DIP Lender, in its sole discretion, chooses to

file such financing statements, trademark filings, copyright filings, mortgages,

notices of lien or similar instruments, or take possession of or control over, or

otherwise confirm perfection of the liens and security interests granted to them

hereunder, such liens and security interests shall be deemed valid, perfected,

NGEDOCS: 1861355.5

allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and from the date of entry of the Interim Order forward. Upon the request of the DIP Lender, without any further consent of any party, the DIP Lender and Debtor are each authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender to validate, perfect, preserve and enforce DIP Liens. By this Final Order, which shall serve as evidence of perfection, the DIP Lender shall be deemed to have executed all such agreements, financing statements, instruments and other documents as may reasonably be requested to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens;

(b)     A copy of this Final Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such copy of this Final Order for filing and recording; and

(c)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision or any other provision inconsistent with the terms of this Final Order shall have no force and effect with

respect to the transactions granting postpetition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the DIP Lender in accordance with the terms of the DIP Documents or this Final Order.

11.   **Preservation of Rights Granted Under the Order**.

(a)   No claim or lien having a priority superior to or pari passu with those granted by this Final Order to the DIP Lender shall be granted or allowed while any portion of the Financing or the commitments thereunder (including repayment of the Carve Out) or the DIP Obligations remain outstanding, and the DIP Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

(b)   Unless all DIP Obligations shall have indefeasibly been paid in cash in full, the Debtor shall not seek, and others shall not seek, and it shall constitute an Event of Default, if there is, (i) any modification or extension of this Final Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence, (ii) an order converting or dismissing the Chapter 11 Case or (iii) if Debtor seeks to obtain financing from any other source (such that any DIP Obligations would remain outstanding after any such funding) on either a pari passu or priority basis or if Debtor seeks to obtain financing junior to the DIP Lender without the DIP

Lender's consent.  For the avoidance of doubt, it shall not constitute an event of default if the Debtor files a motion for approval of any postpetition financing the terms of which require the payment of all DIP Obligations in full;

(c)    If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the DIP Lender pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations shall have been indefeasibly paid in cash in full and any claims for diminution have been satisfied (and that such Superpriority Claims, priority DIP Liens, replacement security interests, adequate protection superpriority claims and adequate protection liens shall, notwithstanding such dismissal, remain binding on all parties in interest); and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (i) above;

(d)    To the extent of applicable law, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations, DIP Liens and adequate protection liens incurred prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to

19

the DIP Credit Agreement with respect to any DIP Obligations. Notwithstanding any such reversal, stay, modification or vacation, DIP Obligations incurred by the Debtor prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of the Interim Order and this Final Order, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Documents with respect to all uses of DIP Obligations; and

(e)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens and the Superpriority Claims granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7, dismissing the Chapter 11 Case, or by any other act or omission or (ii) the entry of an order confirming a plan of reorganization (or a plan of liquidation) in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Final Order and the DIP Documents shall continue in this Chapter 11 Case, in any successor case, or in any superseding chapter 7 case under the Bankruptcy Code. The DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender, and the adequate protection liens and the adequate protection superpriority claims granted by the provisions of this Final Order and the DIP

20

Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in cash in full and any claims for diminution have been satisfied.

12.    **Limitation on Use of Financing Proceeds and Collateral**.  Notwithstanding anything herein or in any other order by this Court to the contrary, no DIP Collateral, portion of the proceeds of the Financing or part of the Carve Out may be used for any of the following (each, a "DIP Lender Claim") without the prior written consent of the DIP Lender:  (a) to object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under any DIP Document, or the liens or claims granted under either the Interim Order or this Final Order or any DIP Document, (b) to assert any claim or cause of action against the DIP Lender or its respective agents, affiliates, representatives, attorneys or advisors with respect to the DIP Documents and the Financing, (c) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents or this Final Order, (d) to assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the DIP Lender or its respective affiliates, representatives, attorneys or advisors in connection with matters related to the Financing or the DIP Documents to the extent approved under this Final Order, or (e) to seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Documents.  This provision shall be binding on any subsequently appointed or elected trustee or examiner, if any.

13.    **Enforcement of Remedies**.

(a)    Upon an Event of Default or the occurrence of the maturity date under the DIP Documents, the DIP Obligations shall become immediately due and owing.  **Absent an order of this Court to the contrary, in the absence of**

NGEDOCS: 1861355.5

full payment in cash of all of the DIP Obligations when due, as provided for in this paragraph, the automatic stay is hereby deemed vacated as provided in this Final Order on the fifth business day after such payment becomes due (subject to the notice requirements in Section 6(b) above), and the DIP Lender shall thereafter be permitted to exercise such rights and remedies under such agreements, documents, and applicable law as to all or such part of the DIP Collateral as the DIP Lender shall, in its sole discretion, elect, including, but not limited to, the DIP Lender's right to foreclose on the mortgages and seek to take possession of any cash of the Debtor that is DIP Collateral. For so long as the DIP Lender believes that the Debtor is in default under the DIP Loan Documents or this Order, the DIP Lender shall have no obligation to fund pursuant to any Budget or otherwise. Assuming the automatic stay is vacated pursuant to this paragraph, upon such enforcement by the DIP Lender, the Debtor shall cooperate with the DIP Lender in the disposition of the Collateral and shall not otherwise interfere or actively encourage others to interfere with the DIP Lender's enforcement of its rights; and

(b)    Upon an Event of Default of any of the DIP Obligations, as applicable, the Default Rate set forth in the DIP Documents shall immediately be applicable.

14.    **Effect of Stipulations on Third Parties**.

(a)    Each stipulation, admission and agreement contained in this Final Order shall be binding upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the

22

Debtor) under all circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all DIP Lender Claims as of the date of entry of this Final Order; and

(b)     Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code) standing or authority to pursue any cause of action belonging to the Debtor or its estate.

15.     **Agent**.   To the extent the DIP Lender appoints any agent (collateral agent, administrative agent or otherwise) in connection with any DIP Document, such agent may be considered (at the election of the DIP Lender) the DIP Lender for the purposes of any account control agreement, as loss payee under the Debtor's insurance policies or as the secured party under the Financing, and such agent shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement).   Each such agent appointed may serve as agent for purposes of perfecting the DIP Lender's security interests and liens on all DIP Collateral that is of a type such that perfection of a security interest therein may be accomplished only by possession or control by a secured party.

16.     **Order Governs**.   In the event of any inconsistency between the provisions of this Final Order and the DIP Documents, the provisions of this Final Order shall govern.

17.     **Binding Effect; Successors and Assigns**.   The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in this Chapter 11 Case, including, without limitation, the DIP Lender, the Bank, the Bond Trustee and its corresponding bondholders, any committee appointed in this Chapter 11 Case, and the Debtor and of the respective successors and assigns of the foregoing (including, with respect to the Debtor, any chapter 7 or chapter 11 trustee hereinafter appointed or elected

NGEDOCS: 1861355.5

for the Debtor's estate, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and its respective successors and assigns, provided, however, that the DIP Lender shall have no obligation to permit the use of DIP Collateral or to extend any financing or permit the use of cash collateral to any chapter 11 or 7 trustee or similar responsible person appointed for the estate of the Debtor.   In determining to make any loan (whether under the DIP Credit Agreement, a promissory note or otherwise), or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in control of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtor, its creditors, shareholders or estate or (iii) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

18.    **Effectiveness**.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

19.    **Headings**.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

24

20.  **Certain Rights of Prepetition Lenders**.  Except as otherwise expressly provided in this Order or the DIP Credit Agreement, nothing in this Order or in the DIP Credit Agreement shall, or shall be deemed to, derogate any right, protection or privilege granted to the Bond Trustee or the Bank in the Prepetition Credit Documents or in any order approving the Debtor's use of the Prepetition Lenders' cash collateral.

21.  Notwithstanding anything contained in the DIP Credit Agreement to the contrary (including, without limitation, sections 9.4, 5.1 and 10.1 thereof), (a) unless otherwise agreed in writing by the Debtor, (i) the DIP Lender shall limit its communications and requests to Loyola to issues regarding the Lease, the property subject to the Lease, the DIP Lender's rights, privileges and protections as a "Leasehold Mortgagee" thereunder and any estoppel certificate or consent provided or to be provided by Loyola in connection with the DIP Loan, and (ii) the DIP Lender shall keep the Debtor's attorneys and financial advisor reasonably informed about, and permit them to participate in, such communications with Loyola, and (b) in reliance on the terms of that certain letter agreement, dated as of December 16. 2011, by and between the Debtor, the DIP Lender, Ericson Living Holdings, LLC, Erickson Living Properties, LLC and Loyola (the "Letter Agreement"), and so long as the Letter Agreement remains in effect, the DIP Lender has waived the requirements of sections 5.1(l)(ii) and 10.1(u) of the DIP Credit Agreement.

22.  Notwithstanding anything stated in the DIP Credit Agreement, the Loan Documents (as defined in the DIP Credit Agreement) or this Order: (1) any and all fees and expenses sought by or to be paid to the DIP Lender must be reasonable; (2) any and all fees sought or otherwise paid to the DIP Lender from the estate pursuant to the DIP Credit Agreement shall be related to the DIP Facility and shall not, for example, be for any bidding with respect to some or all of the assets of the Debtor; (3) the Debtor shall provide all information required to be

provided to the DIP Lender under the express terms of the DIP Credit Agreement to the Committee at the same time and in the same manner as provided to the DIP Lender; and (4) any dispute concerning this Order or the terms of the DIP Facility shall, during the pendency of this chapter 11 case, be heard in the first instance by this Court, unless the Court lifts the automatic stay with respect to the DIP Lender.

Acknowledged and Agreed:

Dated: Chicago, Illinois
       December 21, 2011

ACKNOWLEDGED AND AGREED TO

_____
THE CLARE AT WATER TOWER

_____
UNITED STATES BANKRUPTCY JUDGE

###End of Order###

26