### FIRST ASSIGNMENT AND ASSUMPTION OF LEASE AGREEMENT
### AND
### AMENDMENT TO LEASE AGREEMENT

This Assignment and Assumption of Lease Agreement and Amendment to Lease Agreement (this "**Agreement**") is made and entered into as of this ___ day of _____, 2012, by and between LOYOLA UNIVERSITY OF CHICAGO, an Illinois not-for-profit corporation ("**Landlord**"), THE CLARE AT WATER TOWER, an Illinois not-for-profit corporation (the "**Clare**"), and _____ ("**Assignee**").

### RECITALS

WHEREAS, Landlord and the Clare were the parties to that certain Lease Agreement Between Loyola University of Chicago, an Illinois not-for-profit corporation, and The Clare at Water Tower, an Illinois not-for-profit corporation, dated as of November 2, 2005, as amended (as so amended, the "**Lease**"), relating to the Leased Premises as more fully described in the Lease, and which have become commonly known as 55 East Pearson, Chicago, Illinois; and

WHEREAS, subject to entry of an order by the United States Bankruptcy Court for the Northern District of Illinois (the "**Bankruptcy Court**") presiding over the Clare's Chapter 11 bankruptcy proceeding, Case No. 11-46151, the Clare desires to assign all of its right, title and interest in the Lease to Assignee and Assignee desires to assume all terms, covenants, conditions, liabilities and obligations of the Clare under the Lease accruing from and after the effective date of the assignment, including, without limitation, all Impositions, and also including all liabilities, obligations and Impositions that accrued, but are not yet due and payable. prior to the Effective Date.

WHEREAS, Landlord and Assignee desire to amend the Lease on, but only on, the terms and conditions hereinafter set forth.

WHEREAS, all capitalized terms not otherwise defined in this Agreement shall have the meaning ascribed thereto in the Lease.

**NOW THEREFORE,** for and in consideration of mutual covenants contained in this Amendment, the foregoing Recitals which are incorporated herein and made a part hereof, and other good and valuable consideration, Landlord, the Clare and Assignee agree as follows:

A.    **Assignment and Assumption.**

1.    Effective [date] (the "**Effective Date**"), the Clare hereby assigns the Lease to Tenant pursuant to the applicable provisions of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. Assignee hereby accepts the assignment of, and assumes and agrees to keep, perform, fulfill or cause to be performed all of the terms, covenants, conditions, liabilities and obligations contained in the Lease accruing from and after the Effective Date, including, without limitation, all Impositions, and also including all liabilities, obligations and Impositions that accrued, but are not yet due and payable. prior to the Effective Date.

B.    **Amendment**.  Effective on [the Effective Date], the Lease is hereby amended as follows:

1.    Delete the language of Recitals B, D and E on page 1 of the Lease and substitute "Intentionally omitted" for each.

2.      In Section 1.2(a) (13), delete ", its parent corporation FSCSC," and "Greystone Development, and".

3.      Section 1.2 (a)(15) of the Lease is amended to include the following terms, as defined in this Agreement:

| Defined Term | Section |
|---|---|
| Fee Estate | 2.2 |
| Fee Mortgage | 8.7 |
| Incidental Use | 5.1(b) |
| New Lease | 8.5(f) |
| Primary Use | 5.1(b) |

In addition, insert the following as new Section 1.2(a)(16):   "**2012 Equivalent Dollars"** means the equivalent purchasing power at any time of the value of the same number of U.S. Dollars in calendar year 2012.  The 2012 equivalent dollars of any amount shall be determined by using the same CPI formula for increases used to calculate increases in Base Rent from and after calendar year 2013."

4.      Add the following as Section 2.1(a)(1)(C):

"The annual Base Rental for the Lease Year beginning November 2, 2011 until November 1, 2012 is Two Million Three Hundred Eighty Five Thousand One Hundred Twenty Dollars ($2,385,120.00) (the 2012 "**Reset Base Rental**")."

Insert the following at the beginning of Section 2.1(a)(2):  "For the period from November 2, 2005 until [effective date of assignment],"

Insert the following as Section 2.1(a)(3):

"Annual CPI Increases for Reset Base Rental.  For the period beginning [effective date of assignment], the Landlord shall calculate the rent increase for each subsequent Lease Year, not less than five (5) days before the commencement of each subsequent Lease Year of the Term (or as soon thereafter as practicable once the applicable CPI is announced).  The Adjusted Base Rental shall be calculated by applying the CPI Rent Factor as described in the preceding Section 2.1(a)(2).  Notwithstanding the foregoing, annual increases in Base Rental are subject to a limitation.  Beginning with the Lease Year that commences on November 2, 2012, if the application of the CPI Rent Factor to the Reset Base Rental results in an increase that exceeds 3.75%, the Adjusted Base Rental shall be limited to an increase of 3.75%.  The limitation in each subsequent Lease Year is determined by applying an interest rate of 3.75% per annum, to the Base Rental for the immediately preceding Lease Year.  If the application of the CPI Rent Factor results in an actual annual CPI increase in any Lease Year that is more than 3.75%, the excess is deferred until such Lease Year(s) when the application of CPI Factor results in an annual CPI increase of less than 3.75%, in which case the deferred excess increase will be added to the annual CPI increase for a total CPI increase of up to 3.75%; provided, further, that the deferred excess increases shall continue to be carried forward to following Lease Years until fully recaptured ("Reset Base Rental Limit").  Adjusted Base Rental for any Lease Year may not exceed the Reset Base Rental Limit amount for such Lease Year.  Landlord shall give written notice of the Adjusted Base Rental for each Lease Year within thirty (30) days after its calculation.  In the event that the Current CPI Index is announced less than five days before the

commencement date of the Lease Year, Landlord will determine the rent increase as soon thereafter as practicable once the applicable CPI is announced, and any resulting increase in Base Rental shall be retroactive to the commencement date of the Lease Year.  In the interim period, Tenant shall continue to pay Base Rental based on the rate last in effect, and Tenant shall bring current and pay any arrearage resulting from such retroactive increase within ten (10) days of receipt of written notice of the increase."

5.      Add the following to the end of Section 2.2:

"Tenant shall not be obligated to pay the following items payable, accrued, or incurred by Landlord: (a) debt service on any Fee Mortgages secured by Landlord's Fee Estate; (b) depreciation, amortization, brokerage commissions, financing or refinancing costs, management fees, or leasing expenses for the Retained Parcel or the Fee Estate; (c) consulting, overhead, accounting, tax preparation, other professional fees, travel, legal and staff costs, bank service charges, and other costs arising from Landlord's ownership of the Retained Parcel or the Fee Estate or incurred by Landlord in connection with the administration and monitoring of this Lease, except as permitted in the Lease; and (d) any sums payable by Landlord under this Lease, not otherwise subject to reimbursement or repayment by Tenant under this Lease.  "**Fee Estate**" means Landlord's fee interest in the Leased Premises, including Landlord's reversionary interest, all subject to this Lease."

6.      In the third line of Section 2.3, before "Default", add "Event of".

7.      In the eighth line of Section 2.4(a), between "debts, and" and "to such", insert "in the case of any payment or Rental to be made to Landlord".

8.      At the end of Section 2.5, delete "with respect to the development of the Leased Premises".

9.      Add the following to the end of Section 3.1:

"Anything to the contrary contained herein notwithstanding "Impositions" shall not, however, include any of the following, all of which shall be the obligation of Landlord to pay: (a) any item listed in this paragraph that is levied, assessed, or imposed against the Fee Estate of Landlord; (b) any franchise, income, excess profits, estate, inheritance, succession, transfer, gift, corporation, business, capital levy, or profits tax, or license fee, of Landlord, except as provided in Section 2.5; and (c) interest, penalties, and other charges for items (a) and (b)."

10.     In the second line of Section 3.4, after "Imposition", insert "or the legality, valuation, assessment, or reassessment (whether proposed, phased, or final) of the Leased Premises for Impositions".

11.     Add the following Sections 3.7:

"3.7     **Miscellaneous**.  Tenant shall be entitled to any refund of any Impositions it paid, to the extent attributable to periods within the Lease Term, whether such refund is made during or after the Lease Term."

12.     In the eighth line of Section 4.1, delete the phrase beginning with "adequate parking" through "Landlord" in the following line, and insert "adequate parking including 20 assigned parking spaces designated as space numbers Loyola 1 through Loyola 20, inclusive, located on portions of the third level and fourth level of the parking garage for the use of Landlord."  In the very next sentence,

describing associated amenities after "roof terrace", strike the entire rest of the sentence beginning with "club room" through "only" and insert the following phrase instead:  "club room; therapy services (including, but not limited to, physical, rehabilitative, occupational, speech, vision, psychological, massage, chiropractic therapy); café/coffee shop; billiard/game room; card room; computer center; media room/movie theater; art studio and gallery; woodworking shop; business center; guest rooms; valet parking; laundry services; dry cleaning; florist; garden; and non-denominational chapel, all of which shall be for the use of residents, occupants, their respective guests and permitted invitees only.  At the end of the Section, add:

> "The use of the Leased Premises shall include the permitted uses set forth in Section 5.1(b)."

13.    In the fifth line of Section 4.7(a), after "this Article 4" add the following phrase "with respect to subsequent Tenant improvements". In the seventh line on page 16 of the Lease, in Section 4.7(b), delete from "; provided, however" through the end of that sentence. Immediately at the end of such deletion, add the following phrase: "or improvements proposed by Tenant for which Landlord's consent is required by this Section 4.7(b)".  At the end of Section 4.7(b), add the following:

> "Notwithstanding the foregoing, Landlord's prior consent to plans, specifications and designs shall not be required for any improvements (including any additions, alterations, renovations, restorations, replacements or rebuildings to Tenant's Improvements) with an estimated aggregate cost of less than One Million Dollars ($1,000,000), in 2012 Equivalent Dollars; provided that (i) Tenant shall provide Landlord a complete set of the plans and specifications issued for construction and used to obtain required building permits, for Landlord's records, and (ii) any such improvements do not (A) affect the structural support of the Building or any building systems serving the Retained Parcel, or (B) change the exterior design of the Building or (C) alter the Building facade, or its street level access, or (D) results in a change in the use of or access to garages, loading docks and other common areas that affect or are used by both Landlord and Tenant."

In the third line of Section 4.7(c), after "Improvements and", insert ", to the extent affected by such work,".

14.    At the end of Section 5.1(b), add the following:

> "and the following uses, in all or any portion of the Leased Premises, to the extent permitted by any Requirements, as the Requirements may be modified as provided herein: senior retirement housing, market-rate rental dwelling units (including an executive corporate suite arrangement), a hotel, an extended-stay hotel, housing (the foregoing being defined in this Lease as a "**Primary Use**"), and any and all associated amenities and support spaces as defined in Section 4.1 related to any of the foregoing Primary Uses (collectively, an "**Incidental Use**"). Given the duration of the Term, the nature and provision of the Primary Use for senior retirement housing will evolve and change over time, and changes in use consistent with such evolution of senior retirement housing in the greater Chicago metropolitan region for projects which are comparable in terms of quality of operation to that maintained in the Leased Premises shall be permitted. Landlord and Tenant agree that Landlord may withhold its consent to a new Incidental Use not set forth in Section 4.1(b) that is not in keeping with the mission, tradition, religious philosophy, character and/or image of Landlord, or Landlord's adjoining campus and improvements, as reasonably determined by

Landlord.  To the extent that Tenant seeks to incorporate an Incidental Use into the Leased Premises, Tenant shall first notify Landlord in writing of the proposed change and provide reasonable detail, for Landlord's consent.  If Landlord fails to object in writing as provided in Section 16.1 within fifteen (15) business days after such written notice is received by Landlord, the new Incidental Use shall be deemed approved.  If Landlord objects to such proposed change, Landlord shall notify Tenant, and state the basis for its objection, and in such case after receipt of Landlord's objection, Landlord and Tenant shall meet and work to resolve Landlord's objections.  If the parties are unable to resolve the objection within a thirty (30) day period following Landlord's objection, then the new Incidental Use or Primary Use not contemplated above shall not be permitted."

15.    Add the following to the end of Section 5.2:  "Any future covenants, conditions or restrictions of record applicable to the Leased Premises and/or Tenant's Improvements and the Building plaza and any changes to the PD caused or created by Landlord will not unreasonably interfere with Tenant's use and enjoyment of the Leased Premises, other than as provided by this Lease. Tenant may request Landlord's consent to contest in good faith and under terms and conditions reasonably required by Landlord any Requirements imposed by governmental agencies having jurisdiction over the Leased Premises which adversely affect Tenant's normal business operations or impose added material cost on Tenant.  Landlord may condition Landlord's consent on terms and conditions consistent with Section 3.2, for any contest of an ascertainable amount, or on any other terms and conditions reasonably requested by Landlord in connection with such contest."

16.    Add the following to the end of Section 5.2:  "To the extent a Primary Use of the Leased Premises would be permitted by Section 5.1(b), but requires a change, modification or amendment to the then existing land use regulations and entitlements, upon Tenant's written request, Landlord shall, without cost to Landlord, promptly consent to or join in and execute any Application as Tenant reasonably requests, provided that: (a) such Application is in customary form and imposes no material obligations (beyond obligations ministerial in nature) upon Landlord; (b) the same does not adversely affect Landlord, (c) no Default exists; and (d) Tenant reimburses Landlord's fees and costs, including without limitation, Landlord's legal fees and costs and internal administrative costs.  Promptly upon Tenant's request and without charge (except reimbursement of Landlord's fees and costs), Landlord shall furnish all copies of all information in its possession that Tenant reasonably requests for any Application. Unless a Default exists, Landlord shall not appear in opposition to any Application brought, sought, or defended by Tenant before any governmental authority arising out of any Application consistent with this Section, and other provisions of this Lease, unless the proposed change in use is not in keeping with the mission, tradition, religious philosophy, character and/or image of Landlord, or Landlord's campus and improvements, as reasonably determined by Landlord, in which case Landlord shall not consent to or join in any such Application, and Landlord may act in accordance with such concerns and oppose such action. Landlord shall not oppose any of the Primary Uses.  "**Application**" means any agreement, application, certificate, document, or submission (or amendment of any of the foregoing), then required by any governmental authority or public agency to allow Tenant to change the use or zoning of the Leased Premises or to enable Tenant to obtain approvals from such authorities or agencies, use and operate the Leased Premises as permitted by, and in accordance with the terms and conditions of this Lease."

17.    Add the following as new Sections 6.4:

"6.4    **Waiver of Certain Claims**. To the extent that Landlord or Tenant is required to purchase any policy of property insurance under this Lease, the party purchasing such insurance shall cause the insurance carrier to agree to a waiver of subrogation."

18.     In the third line of Section 6.1(a), after "all risk", insert "or causes of loss - special form". At the beginning of Section 6.1(b), before "General", insert "Commercial".  In the last line of that Section, before "any Fee Mortgagee", insert "as may be reasonably required by".  In the third line of Section 6.1(d), replace "employees to be engaged in work under any contract" with "employees of Tenant and/or any third parties engaged by Tenant.  At the end of Section 6.1 add the following:

> "Tenant may provide any insurance under a "blanket" or "umbrella" insurance policy, provided that (i) such policy or a certificate of such policy shall specify the amount(s) of the total insurance allocated to the Leased Premises, which amount(s) shall equal or exceed the amount(s) required by this Lease and shall not be reduced for claims made for other properties; and (ii) such policy otherwise complies with this Lease."

19.     Add the following to the end of Section 7.2(a):  "The foregoing notwithstanding, the Architect may satisfy the requirements of this Section 7.2(a) by such certifications in form and from such parties as is reasonably acceptable to the Landlord and Tenant and any Leasehold Mortgagee and Fee Mortgagee, if applicable."

20.     At the end of the first paragraph of Section 7.4(b), add "subject to the terms of a New Lease (as hereinafter defined), if applicable."

21.     In the tenth line of Section 8.3(a), delete the comma after transferee and insert "or".  In the fourteenth line of Section 8.3(a), delete "FSCSC, or another" and insert "an" and at the end of the sentence add the following ",upon thirty (30) days prior written notice to Landlord; provided that Tenant's right shall be subject to Landlord's request for such reasonable information about the proposed assignee or transferee; and provided further, that Tenant shall not be released from any obligations or liabilities under this Lease as a result of such assignment or transfer."  At the end of Section 8.3(a), add the following:

> "Notwithstanding the foregoing, Tenant shall have the right to sublease any portion of the Leased Premises without the consent of Landlord, but subject to all of the terms, provisions, covenants, agreements and obligations of this Lease, including without limitation the Primary and Incidental Use, Alteration and Compliance with Requirements provisions of the Lease  Any such sublease shall be expressly subordinate to the Lease and the rights of Landlord and Tenant thereunder."

22.     At the end of Section 8.3(d)(2) and (5), add:  "so long as any portion of the Leased Premises is used for the operation of a Continuing Care Retirement Community."  In Section 8.3(d)(6), before license, insert "material".  Section 8.3(d) (7) and (9) are hereby deleted.

23.     Add the following as new Sections 8.5(f) and (g):

> (f)     If this Lease is:  (1) rejected pursuant to any bankruptcy, insolvency or other law affecting creditors' rights; (2) terminated by operation of law; (3) terminated as a result of a merger of  Tenant's leasehold estate in the Leased Premises under this Lease with the Landlord's Fee Estate under this Lease; or (4) terminated by Landlord and Tenant without the consent of the Leasehold Mortgagee; then, upon written request of the Leasehold Mortgagee made any time within thirty (30) days after the occurrence of any of the above events, Landlord and Leasehold Mortgagee shall enter into a restated lease of the Leased Premises, within thirty (30) days of such request (the "**New Lease**").  The New Lease shall name the Leasehold Mortgagee as the tenant under the New Lease, shall

be effective upon the rejection of the Lease and for the remainder of the Lease Term, and shall be upon all of the terms, covenants, and conditions of the Lease, without alteration, provided:

(i)     The Leasehold Mortgagee shall have timely exercised all remedies available to, and performed all obligations of Leasehold Mortgagee in Section 8.5(d);

(ii)    The written request of Leasehold Mortgagee to Landlord for the New Lease shall be accompanied by payment to Landlord of any and all Rental and other sums then due to Landlord under the Lease;

(iii)   The Leasehold Mortgagee shall pay to Landlord at the time of the execution and delivery of the New Lease, any and all Rental and other sums that would at the time of execution and delivery thereof, be due pursuant to this Lease but for such rejection, and in addition thereto, any costs, expenses and fees (including without limitation, Landlord's legal fees and costs and internal administrative costs) to which Landlord shall have been subjected by reason of any then existing Default, or the bankruptcy, insolvency or other legal proceedings pursuant to which the Lease was rejected;

(iv)    The Leasehold Mortgagee shall perform and observe all covenants in the Lease on Tenant's part to be performed and shall further cure and remedy any other covenants and conditions that Tenant was obligated to perform under the terms of this Lease; provided, however, that the Leasehold Mortgagee shall not be required to cure any non-monetary default of Tenant that is impossible for the Leasehold Mortgagee to cure due to the nature of the default (for example, including without limitation, a Default resulting from the historical fact that the Tenant lost a license to operate a Continuing Care Retirement Community, or the failure of Tenant to deliver required financial information within Tenant's control by a certain date), or a non-monetary default that by its nature relates only to Tenant, and cannot be cured by an entity other than Tenant (for example, including without limitation, a prohibited change of management, or failure to deliver required financial information within Tenant's control);

(v)     The Leasehold Mortgagee or tenant under the New Lease shall have the same right, title and interest in and to Tenant's Improvements in the Leased Premises as Tenant had under this Lease; and

(vi)    The Leasehold Mortgagee shall reimburse Landlord at the time of execution of the New Lease for all of Landlord's costs and expenses (including without limitation, Landlord's legal fees and costs and internal administrative costs) to enter into the New Lease.

(g)     If the Tenant's leasehold estate in the Leased Premises under this Lease and Landlord's Fee Estate are ever commonly held, they shall remain separate and distinct estates (and not merge) without Leasehold Mortgagee's and Fee Mortgagee's consent.

24. Add the following new Section 8.7:

8.7 **Fee Mortgage**. Every Fee Mortgage shall be, and state that it is, subject and subordinate to this Lease and any New Lease, and shall attach only to the Fee Estate. "**Fee Mortgage**" means any mortgage that encumbers all or part of the Fee Estate.

25. In Section 9.1(a)(1), delete "five (5) days" and substitute "thirty (30) days". In Section 9.(a)(2), delete "ninety (90) days" and substitute "three hundred sixty five (365) days,or such longer period of time as Landlord, in Landlord's sole discretion, may agree to, provided that all monetary defaults and non-monetary defaults that are not impossible to cure have been cured, or Landlord is not being adversely impacted and its rights under the Lease are not being impaired, and Tenant provides security therefor in such amount and form as Landlord may reasonably request." In Section 9.1(a)(4), delete "sixty (60) days" each time it appears and replace it with "one hundred eighty (180) days".

26. At the beginning of the first sentence of Section 10.2, add the phrase: "Except as prohibited by law," and, after "Landlord", add "or any member of Landlord's Group". In addition, Section 10.2(a), (b), (c), (d), (g) and (i) shall only apply to anything occurring or accruing (including, without limitation, omissions) during the Lease Term; provided, however, that Tenant's obligations shall survive the expiration or termination of the Lease. At the end of Section 10.2 (f), add the phrase, "or Section 5.2."

27. At the end of Section 13.2, add the following:

The Tenant Improvements shall not include and Tenant may remove from the Leased Premises any movable furniture, furnishings, and personal property of Tenant or anyone claiming through Tenant that may be removed without damage to the Leased Premises. The Tenant Improvements shall also not include moveable equipment that is not attached to, and does not form an integral part of the Leased Premises. Any such movable furniture, furnishings, personal property and equipment described in the preceding sentences can be financed be financed by Tenant.

28. In Section 14.8 delete the phrase, "In the event that Landlord shall serve written notice upon Trustee that," and substitute the following: "Except in the event that a Restoration has commenced and is continuing in accordance with Article7, upon."

29. At the end of Section 17.1(b), add the following sentence: "Tenant may seek changes in the Planned Development to increase density or bulk for the Leased Premises consistent with a Primary Use, and subject to the provisions of Section 5.1, Landlord shall reasonably cooperate with such request."

30. At the end of Section 18.2, after "Tenant", add "and any Fee and Leasehold Mortgagee".

31. At the end of Section 18.9(j), insert: "A "business day" shall be any weekday other than a Federal or State of Illinois holiday."

C. **Conditions Precedent**. Notwithstanding the foregoing, this Agreement shall not become effective unless and until the following conditions precedent have been satisfied:

1. Assignee and the Clare shall have executed and delivered this Agreement to Landlord;

2. A copy of the order entered by the Bankruptcy Court authorizing the Clare to assume and assign the Lease to Assignee shall have been delivered to Landlord by the Clare;

3.	On or before the assumption of the Lease, the Clare shall have cured all Defaults including, but not limited to those set forth on **Exhibit 1** to this Agreement.  The cures for all Defaults on Exhibit 1 shall be made in the manner set forth after each Default listed on **Exhibit 1** and cures for any other Defaults shall be in a manner satisfactory to Landlord;

4.	The Clare shall pay Landlord the deferred rent of $1,939,265.00;

5.	On or before the assumption of the Lease, Assignee shall have provided Landlord with adequate assurance of future performance of the terms, covenants, conditions, liabilities, duties and obligations under the Lease in form and substance satisfactory to Landlord; and

6.	All Leasehold Mortgagees shall have executed and delivered releases to Landlord of Landlord's obligations to them under Section 8.5 of the Lease.

7.	The Executive Committee of Landlord's Board of Trustees shall have approved this Agreement.

D.	**Prior Amendments**.  The following prior modifications to the Lease were effective as of the dates noted herein, and are hereby incorporated by reference into this Agreement for ease of administering the Lease.

1.	The Memorandum of Lease dated as of November 2, 2005 recorded as document No. 0534805195 in the Cook County Recorder of Deeds in the State of Illinois, amended the legal descriptions attached as exhibit to the Lease, effective November 2, 2005.

2.	Effective and pursuant to a letter dated October 27, 2005 from Landlord to the Clare, payment of the Demolition Costs payment that was due and payable under the Lease Option Agreement upon exercise of the option was delayed until November 30, 2005.  Effective and pursuant to a letter dated December 13, 2005 from Landlord to the Clare, $500,000 of the Demolition Costs were to have been paid from proceeds of the Tenant's financing closing on December 13, 2005 and the Landlord and Tenant were to meet to review and reconcile the remaining balance of the Demolition Costs.

3.	Effective and pursuant to a letter dated October 31, 2005 from Landlord to the Clare, payment of the November 2005 rent that was due and payable under section 2.1(a) of the Lease, and under the Lease Option Agreement upon exercise of the option, was delayed until December 2, 2005.

4.	Effective and pursuant to a letter dated November 18, 2005 from Landlord to the Clare, a procedure was established for avoiding an Event of Default in the event Tenant was unable to comply with certain dates regarding commencement and completion of construction established in section 4.4 of the Lease.

5.	Effective November 5, 2005 and pursuant to a letter dated December 9, 2005 from Landlord to the Clare, the legal descriptions under the Lease have been amended by substituting revised legal descriptions in the Memorandum of Lease.

6.	Tenant verbally agreed to provide at Tenant's cost all of the insurance coverage required under section 4.3(a)(3) and Exhibit E of the Lease, to the extent that such coverage was not provided by Tenant's Construction Contractor.

7.     Tenant (through its attorney Erika Kruse) verbally requested, and Landlord verbally agreed, that the caisson easement with 50 East Chicago LLC will become effective immediately upon execution (rather than upon commencement of construction as provided in section 5.3(d) of the Lease).

8.     Effective and pursuant to a letter dated March 22, 2011 from Landlord to the Clare, the parties agreed to defer payment of ten months rent from March 2011 through December 2011, with such ten months of deferred rent to be repaid over a period of 20 months beginning in March of 2021.  As of the Effective Date, Landlord and Assignee agree to cancel this letter agreement to defer rent.

E.     **Lease Commencement: Rent Commencement.**  The Lease Commencement Date was November 2, 2005 and the Rent Commencement Date was November 2, 2005.

F.     **Entire Agreement**.  The Lease and this Agreement, and the documents and instruments listed on **Exhibit 2** attached hereto and made a part hereof, set forth the entire agreement between the parties with respect to the Lease.

G.     **Lease**.  Except to the extent modified by this Agreement, all of the terms of the Lease shall remain in full force and effect.


**IN WITNESS WHEREOF**, the undersigned duly authorized representatives of the parties hereto have executed this Agreement as of the date and year first above written.

**LANDLORD**:                                           **ASSIGNEE**:

**LOYOLA UNIVERSITY OF CHICAGO**,             _____
an Illinois not-for-profit corporation


By: _____
Name Printed: _____       By: _____
Title: _____       Name Printed: _____
                                             Title: _____

**THE CLARE AT WATER TOWER**


By: _____
Name Printed: _____
Title: _____