**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| The Clare at Water Tower, | § | Case No. 11-46151 |
|          Debtor. | § | |
| | § | Hon. Timothy A. Barnes |
| | § | |
| | § | **Hearing Date**: **July 2, 2012 at 2:00 p.m. (CST)** |

### NOTICE OF FIRST AND FINAL FEE APPLICATION

**PLEASE TAKE NOTICE THAT ON JUNE 22, 2012, SNR DENTON US LLP FILED THE FIRST AND FINAL FEE APPLICATION OF FTI CONSULTING, INC. FOR ALLOWANCE OF CHAPTER 11 ADMINISTRATIVE CLAIM FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF DECEMBER 9, 2011 THROUGH JUNE 22, 2012(THE "FINAL FEE APPLICATION").**

     PLEASE TAKE FURTHER NOTICE THAT on July 2, 2012, at 2:00 p.m. (prevailing Central Time), a hearing on the Final Fee Application shall take place before the Honorable Timothy A. Barnes or before any other judge who may be sitting in his place or stead, in Courtroom 642 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, at which time you may appear if you deem fit.

Dated: June 22, 2012

                              SNR DENTON US LLP

                                 /s/ Stefanie L. Wowchuk
                            Stefanie L. Wowchuk (IL Bar No. 6294131)
                            233 S. Wacker Drive
                            Suite 7800
                            Chicago, IL 60606
                            stefanie.wowchuk@snrdenton.com
                            Telephone:  (312) 876-8000

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| The Clare at Water Tower, | § | Case No. 11-46151 |
| Debtor. | § | |
| | § | Hon. Timothy A. Barnes |
| | § | |
| | § | **Hearing Date**: **July 2, 2012 at 2:00 p.m. (CST)** |

**SUMMARY OF
FIRST AND FINAL FEE APPLICATION OF FTI CONSULTING, INC.
FOR ALLOWANCE OF CHAPTER 11 ADMINISTRATIVE CLAIM FOR
<u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

Name of Applicant:                               <u>FTI Consulting, Inc.</u>

Authorized to Provide
Professional Services to:                        <u>The Official Committee of Unsecured Creditors</u>

Date of Retention:                               <u>Effective as of December 9, 2011</u>

Period for Which Compensation
And Reimbursement are Sought:                    <u>December 9, 2011 through June 22, 2012</u>

Amount of Fees:                                  <u>$121,940.57</u>

Amount of Expense Reimbursement
Sought:                                          <u>$3,173.74</u>

Previous Applications:                           <u>No</u>

Total Amount of Compensation and
Expenses Previously Allowed:                     <u>None</u>

This is a(n):            ___ Interim Application     _X_ Final Application

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| The Clare at Water Tower, | § | Case No. 11-46151 |
| Debtor. | § | |
| | § | Hon. Timothy A. Barnes |
| | § | |
| | § | **Hearing Date**: **July 2, 2012 at 2:00 p.m. (CST)** |

**FIRST AND FINAL FEE APPLICATION OF FTI CONSULTING, INC.
FOR ALLOWANCE OF CHAPTER 11 ADMINISTRATIVE CLAIM FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

FTI Consulting, Inc. ("**FTI**"), Financial Advisor for the Official Committee of Unsecured Creditors in the above-captioned case (the "**Committee**"), hereby applies for allowance and payment in full (the "**Application**") of a Chapter 11 administrative claim for (i) compensation in the amount of $121,940.57 for the reasonable and necessary services that FTI has rendered to the Committee (the "**Fees**") and (ii) reimbursement of the actual and necessary expenses that FTI has incurred (the "**Expenses**") in the amount of $3,173.74 for the period from December 9, 2011 (the effective date of FTI's retention) through June 22, 2012 (the "**Final Application Period"**).  In support of this Application, FTI respectfully states as follows:

**BACKGROUND**

1. On November 14, 2011 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

2. Since the Petition Date, the Debtor has continued in possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3. On December 1, 2011, pursuant to Section 1102 of the Bankruptcy Code, the United States Trustee for the Northern District of Illinois (the "**U.S. Trustee**") appointed the Committee. The Committee currently consists of seven members, including: (i) Betty Bergstrom, (ii) The Estate of Dolores Graff, (iii) Richard H. Harris, (iv) Beatrice Lehman, (v) Janet McDermott[1], (vi) The City of Chicago and (vii) Sodexo America, LLC.

### RETENTION

4. On January 18, 2012, this Court approved the retention of FTI to serve as the Committee's financial advisor, and said retention is retroactive to December 9, 2011. A copy of the retention order is attached hereto as **Exhibit "F"**.

### JURISDICTION

5. This Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

6. Venue of the Debtors' Chapter 11 cases is proper in this district pursuant to 28 U.S.C. § 1408.

### SUMMARY OF PROFESSIONAL SERVICES RENDERED

7. A summary of FTI's time by professional is attached hereto as **Exhibit "A"**, a summary of FTI's expenses is attached hereto as **Exhibit "B"**, a summary of FTI's time by task description is attached hereto as **Exhibit "C"**, a detailed time activity of FTI's professionals is attached hereto as **Exhibit "D"**, and detailed expenses of FTI professionals are attached hereto as **Exhibit "E"**.

8. Given liquidity and budgetary constraints, FTI was careful not to duplicate efforts with financial advisors retained by the Debtor and bond holders. The following paragraphs describe the primary services rendered by FTI to the Committee:

---

[1] Janet McDermott replaced her deceased husband, William McDermott, who was an original member of the Committee.

- 4 -

  A. <u>Analysis of Case Professional Fees.</u>  In an effort to assess the reasonableness of the fee structure of the Debtor's investment banker, FTI performed the following: (1) reviewed the investment banker's engagement letter and fee structure; (2) reviewed the investment banker's declaration in support of its fee structure, including the comparable fee study prepared by the investment banker; and (3) prepared a comparable study of investment banker fees.  FTI corresponded with Committee counsel throughout the process of preparing a comparable fee study and communicated the results of the study to the Committee.  FTI assisted Committee counsel in preparation of a Court objection to the fee structure of the Debtor's investment banker.  Ultimately, the Committee professionals were successful in their efforts to reduce the investment banker's fee structure.

  B. <u>Financing Matters.</u>  In an effort to assess the reasonableness of the proposed DIP financing and cash collateral motion, FTI reviewed the relevant documents filed with the Court, including the Debtor's cash budget and adequate protection provisions, and FTI prepared a comparable study of DIP pricing terms.  FTI corresponded with Committee counsel throughout the process of preparing a comparable study and engaged in negotiations with the Debtor's advisors.  FTI assisted Committee counsel in preparation of a Court objection to the proposed DIP financing.  Ultimately, the Committee professionals were successful in their efforts to negotiate a DIP financing arrangement and cash collateral provisions that were agreeable to the Committee.

  C. <u>Asset Sales.</u>  FTI monitored the Debtor's sale process in an effort to ensure that the Debtor contacted all potential bidders and that the terms of the sale were satisfactory to the Committee.  In doing so, FTI performed the following: (1) reviewed sale documents posted to the Debtor's data room; (2) researched potential bidders; (3) attended meetings / participated in calls with the Debtor's advisors, Committee counsel, a potential stalking horse bidder, and certain residents to discuss various sale issues; (4) reviewed residency agreements and resident deposits; and (5) reviewed the asset purchase agreement and bid procedures.  Ultimately, the Committee professionals were instrumental to the process of completing the sale.

  9. On January 11, 2012, the Court held a hearing on the FTI retention application, at which hearing the Court requested that FTI file a budget of anticipated fees and expenses to be incurred as it relates to the retention of FTI in this case (the "**FTI Budget**").  On January 17, 2012 the FTI Budget was filed with the Court, showing budgeted fees and expenses totaling $187,245.  Pursuant to this final application, FTI is seeking reimbursement of fees and expenses totaling $125,114.31, which is $62,130.69 less than the budgeted amount accepted by the Court.

- 5 -

Furthermore, FTI's fees of $121,940.57 have already been voluntarily reduced by 15%, pursuant to FTI's retention application.

## BASIS FOR RELIEF REQUESTED

10. Section 330 of the Bankruptcy Code authorizes the Court, after notice and a hearing, to award to a trustee, an examiner, or other professional employed under Section 327: (a) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and (b) reimbursement for actual, necessary expenses. Section 503(b), moreover, provides that any compensation and reimbursement awarded under Section 330(a) shall be paid as an administrative expense of the estate.

11. In determining the amount of reasonable compensation to be awarded under Section 330(a), the bankruptcy court must consider the nature, the extent and the value of such services, taking into account all relevant factors, including: (a) the time spent on such services; (b) the rates charged for such services; (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (e) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (g) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

12. In conjunction with the factors enumerated in Section 330(a)(3), some courts also look at the so-called "Johnson Factors" which grew out of *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v.*

*Bergeron*, 489 U.S. 87 (1989), a civil rights case. The *Johnson* Factors were deemed applicable to bankruptcy cases in the case of *In re First Colonial Corp. of America*, 544 F.2d 1291, 1299 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977). In that case, the court identified the following twelve factors to be considered in awarding reasonable compensation: (a) the time and labor required; (b) the novelty and difficulty of the questions; (c) the skill requisite to perform the legal service properly; (d) the preclusion of other employment by the attorney due to acceptance of the case; (e) the customary fee; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client or the circumstances; (h) the amount involved and the results obtained; (i) the experience, reputation, and ability of the attorneys; (j) the "undesirability" of the case; (k) the nature and length of the professional relationship with the client; and (l) awards in similar cases.

13. In general, the *Johnson* Factors are similar to those listed in Section 330(a)(3). *See In re Phillips*, 291 B.R. 72, n. 31 (Bankr. S.D. Tex. 2003).

14. Other courts have endorsed a "lodestar" analysis, as established in *Lindy Bros. Builders, Inc. v. Am. Radiator & Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973), *appeal following remand*, 540 F.2d 102, 117 (3d. Cir. 1976). The "lodestar" is obtained by multiplying the reasonable number of hours times a "reasonable" hourly rate. In order to determine a "reasonable" hourly rate, courts generally look at the professional's normal billing rates outside of bankruptcy. *Id.* Generally, so long as the rates being charged are the professional's normal rates charged in bankruptcy or non-bankruptcy matters alike, they will be afforded a presumption of reasonableness. *In re Jefsaba, Inc.*, 172 B.R. 787, 798 (Bankr. E.D. Pa. 1994). Along with a reasonable rate, the professional must also demonstrate the reasonableness of the time spent by the professional on the various tasks. *Id.*

15. Finally, some courts use a combination of the *Johnson* Factors and the lodestar analysis. Consequently, the lodestar may be adjusted either upward or downward according to

the *Johnson* Factors. *See Miner v. Stehlik & Assocs. (In re Broady)*, 92 B.R. 389 (Bankr. W.D. Mo. 1988).

16. The Seventh Circuit has not definitively adopted either the *Johnson* Factors or the "lodestar" analysis, although it has inherently sanctioned the use of both approaches. *See In re UNR Indus.*, 986 F.2d 207, 210 (7th Cir. 1993) (approving bankruptcy court's application of lodestar analysis); *In re Geraci*, 138 F.3d 314, 317-18 (7th Cir. 1998) (approving bankruptcy court's application of the *Johnson* Factors).

17. The Fees and Expenses requested by FTI are appropriate under all three standards. In particular, FTI's request is fair and reasonable given (a) the complexity of this case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services in similar matters. FTI believes that the hourly rates charged for its professionals are reasonable and competitive with the hourly rates charged by financial services firms of comparable size and quality that have similar expertise and level of experience as FTI. FTI was required to utilize professionals with substantial experience and expertise for the majority of the work associated with this assignment. The persons working on this case have demonstrated the skill in their respective fields required to provide the services necessary.

**RELIEF REQUESTED**

18. By this Application, FTI seeks final allowance of compensation for actual and necessary professional services rendered in the amount of $121,940.57 and seeks final allowance and payment of its actual and necessary expenses in the amount of $3,173.74 for the Final Application Period. FTI has received a total of $48,566.95 from the Debtors for the fees and expenses requested in this Application, leaving an unpaid balance of $76,547.36.

19. No agreement or understanding exists between FTI and any other entity (other than shareholders or employees of FTI) for the sharing of compensation received or to be received for services rendered in or in connection with these cases.

20. I have read the foregoing Application for compensation and reimbursement of expenses.  To the best of my knowledge, information and belief formed upon the basis of my participation in this case, as well as after reasonable inquiry, the facts set forth in the foregoing Application are true and correct and materially comply with the applicable orders, rules, guidelines and requirements as set forth by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, this Court's local rules, and the Executive Office for the United States Trustee.

WHEREFORE, FTI respectfully requests that the Court (i) approve and allow the final application sum of $121,940.57 for services rendered, plus expenses of $3,173.74, for a total final compensation of $125,114.31; (ii) authorize payment to FTI from the Debtor of the unpaid balance of $76,547.36; and (iii) grant such other and further relief as may be just and proper.

Dated:  June 22, 2012                    FTI CONSULTING, INC.

                                                                By:    */s/ Martin L. Cohen*
                                         Martin L. Cohen
                                         1101 K Street NW
                                         Suite B100
                                         Washington, DC  20005
                                         Telephone:  (202) 312-9230
                                         E-mail: martin.cohen@fticonsulting.com

                                         Financial Advisor for the Official Committee of
                                         Unsecured Creditors of The Clare at Water Tower