**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| ------------------------------------------------------- ) | Chapter 11 |
| In re: ) | |
| ) | Case No. 11-46151 |
| The Clare at Water Tower, ) | Hon. Timothy A. Barnes |
| ) | |
| Debtor. ) | **Hearing Date: July 2, 2012 at 2:00 p.m.** |
| ) | **(Central Standard Time)** |
| ) | **Objections Due: June 29, 2012 at 5:00 p.m.** |
| ------------------------------------------------------- ) | **(Central Standard Time)** |

**NOTICE OF FINAL FEE APPLICATION**

**PLEASE TAKE NOTICE THAT ON JUNE 22, 2012, DLA PIPER LLP (US) FILED ITS FINAL FEE APPLICATION OF DLA PIPER LLP (US) AS COUNSEL TO THE DEBTOR, SEEKING ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES UNDER SECTIONS 330 AND 331 OF THE BANKRUPTCY CODE (THE "FINAL FEE APPLICATION").**

PLEASE TAKE FURTHER NOTICE THAT on July 2, 2012 2:00 p.m. (prevailing Central Time), a hearing on the Final Fee Application shall take place before the Honorable Timothy A. Barnes or before any other judge who may be sitting in his place and stead, in Courtroom 642 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, at which time you may appear if you deem fit.

Dated: June 22, 2012

Matthew M. Murphy (ARDC No. 06208157)
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

Thomas R. Califano, NY Bar No. 2286144
George B. South III, NY Bar No. 2446771
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

 /s/ *Matthew M. Murphy*
Attorneys for Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 11-46151 |
| The Clare at Water Tower, | ) | Hon. Timothy A. Barnes |
|  | ) |  |
| Debtor. | ) | **Hearing Date: July 2, 2012 at 2:00 p.m.** |
|  | ) | **(Central Standard Time)** |
|  | ) | **Objections Due: June 29, 2012 at 5:00 p.m.** |
|  | ) | **(Central Standard Time)** |

## COVER SHEET FOR FINAL FEE APPLICATION OF DLA PIPER LLP (US) AS COUNSEL FOR THE DEBTOR SEEKING ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES
### (PURSUANT TO LOCAL RULE 5082-1(A))

| | |
|---|---|
| Name of Applicant: | DLA Piper LLP (US) |
| Authorized to Provide Professional Services to: | The Clare at Water Tower |
| Date of Order Authorizing Employment: | December 20, 2011, effective retroactively to November 14, 2011 [Dkt. No. 155] |
| Period for Which Compensation is Sought: | November 14, 2011 through April 27, 2012 |
| Amount of Fees Sought: | $1,849,544.00 |
| Amount of Expense Reimbursement Sought: | $36,279.68 |
| Amount of Fees and Expenses Written-off/Waived During Compensation Period | $51,594.08 |

This is a(n):        ☐ Interim Application        ☒ Final Fee Application

If this is not the first application filed herein by this professional, disclose as to all prior fees:

| Date Filed | Period Covered | Total Requested (Fees & Expenses) | Total Allowed (Fees & Expenses) | Fees & Expenses Previously Paid |
|---|---|---|---|---|
| 4/17/12 | 11/14/11-2/29/12 | $1,026,379.53 | N/A | $674,080.82[1] |

---

[1] In addition, DLA Piper has received payments of $290,647 in respect of its March 2012 invoice and $276,793 in respect of its April 2012 invoice, both in accordance with the Court's *Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 187].

*[Signature page follows]*

Dated: Chicago, Illinois
      June 22, 2012

/s/ *Matthew M. Murphy*

Matthew M. Murphy (ARDC No. 06208157)
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone:  (312) 368-4000
Facsimile:   (312) 236-7516

Thomas R. Califano, NY Bar No. 2286144
George B. South III, NY Bar No. 2446771
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone:  (212) 335-4500
Facsimile:   (212) 335-4501

*Attorneys for The Clare at Water Tower*
*Debtor and Debtor-in-Possession*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 11-46151 |
| The Clare at Water Tower, | ) Hon. Susan Pierson Sonderby |
| | ) |
| Debtor. | ) **Hearing Date: July 2, 2012 at 2:00 p.m.** |
| | ) **(Central Standard Time)** |
| | ) **Objections Due: June 29, 2012 at 5:00 p.m.** |
| | ) **(Central Standard Time)** |

## FINAL FEE APPLICATION OF DLA PIPER LLP (US) AS COUNSEL TO THE DEBTOR, SEEKING ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES UNDER SECTIONS 330 AND 331 OF THE BANKRUPTCY CODE

DLA Piper LLP (US) ("DLA Piper"), counsel to The Clare at Water Tower ("The Clare"), as debtor and debtor-in-possession (the "Debtor") in this chapter 11 case (the "Chapter 11 Case"), pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5082-1 of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), submits this Final Fee Application (the "Final Fee Application") seeking on a final basis allowance and payment of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in connection with services rendered to the Debtor for the period from November 14, 2011 through April 27, 2012 (the "Compensation Period"). In support of this Final Fee Application, DLA Piper represents as follows:

### JURISDICTION

1.  The Court has jurisdiction over this Chapter 11 Case and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Venue in this Court is proper pursuant to 28 U.S.C. §1408 and 1409.  The statutory predicates for relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and Local Rule 5082-1.

## BACKGROUND

### A.    Commencement of the Debtor's Chapter 11 Case

2.   On November 14, 2011 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is continuing to manage its assets as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 1, 2011, the office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  No trustee or examiner has been appointed in the Debtor's Chapter 11 Case.

3.   All pertinent information regarding the Debtor's business, governance, capital structure, and the circumstances leading to this Chapter 11 Case is contained in the *Declaration of Judy Amiano in Support of Chapter 11 Petition and First Day Motions* [Dkt. No. 7] (the "Amiano Declaration"), expressly incorporated herein by reference.

### B.    Debtor's Retention of DLA Piper

4.   On November 23, 2011, the Debtor filed an *Application for Entry of an Order Authorizing Employment and Retention of DLA Piper LLP (US) as Counsel to the Debtor* Nunc Pro Tunc *to the Petition Date* [Dkt. No. 85] (the "Retention Application").  As stated in the Retention Application, the Debtor has employed DLA Piper to provide general legal services that are necessary to enable the Debtor to faithfully execute its duties as debtor-in-possession throughout this Chapter 11 Case.  (See Retention Application, ¶10).[1]  The Debtor agreed to

---

[1]    DLA Piper has agreed to provide the following professional services, among others,  to the Debtor: (a) advising the Debtor of its rights, powers and, duties as debtor and debtor-in-possession while operating and

compensate DLA Piper on an hourly basis in accordance with DLA Piper's ordinary and customary hourly rates in effect on the date the particular services are rendered and to reimburse DLA Piper for actual and necessary out-of-pocket expenses incurred by the firm while rendering its legal services. (Id. ¶12).

5.    Prior to the Petition Date, DLA Piper received a retainer from the Debtor in the amount of $375,000.  As of the Petition Date, such retainer had been exhausted, and DLA Piper was owed the aggregate amount of $27,054.16 in unpaid legal fees and expenses. DLA Piper, however, has waived its entitlement to receive payment of such amount.

6.    By order entered on December 20, 2011, DLA Piper was retained as counsel for the Debtor retroactive to November 14, 2011 [Dkt. No. 155] (the "DLA Retention Order").

7.    On January 11, 2012, this Court entered its *Order Under 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 187] (the "Interim Compensation Order"), according to which DLA Piper filed its *First Interim Fee Application of DLA Piper LLP (US) as Counsel to the Debtor, Seeking Allowance and Payment of Interim Compensation and Reimbursement of Expenses Under Sections 330 and 331 of the Bankruptcy Code* [Dkt. No. 332] on April 17, 2012 (the "First

---

managing its business and property under chapter 11 of the Bankruptcy Code; (b) preparing on behalf of the Debtor all necessary and appropriate applications, motions, proposed orders, other pleadings, notices, schedules and other documents, and reviewing all financial and other reports to be filed in this Chapter 11 Case; (c) advising the Debtor concerning, and preparing responses to, applications, motions, other pleadings, notices and other papers that may be filed by other parties; (d) advising the Debtor with respect to, and assisting in the negotiation and documentation of, financing agreements and related transactions; (e) reviewing the nature and validity of any liens asserted against the Debtor's property and advising the Debtor concerning the enforceability of such liens; (f) advising the Debtor regarding its ability to initiate actions to collect and recover property for the benefit of its estate; (g) advising and assisting the Debtor in connection with any potential property dispositions; (h) advising the Debtor concerning executory contract and unexpired lease assumptions, assignments and rejections as well as lease restructurings and recharacterizations; (i) advising the Debtor in connection with the formulation, negotiation and promulgation of a plan of reorganization, and related transactional documents; (j) assisting the Debtor in reviewing, estimating and resolving claims asserted against the Debtor's estate; (k) commencing and conducting litigation necessary and appropriate to assert rights held by the Debtor, protect assets of the Debtor's chapter 11 estate or otherwise further the goal of completing the Debtor's successful reorganization; and (l) providing non-bankruptcy services for the Debtor to the extent requested by the Debtor. (See Retention Application, ¶10(a)-(l)) .

Interim Fee Application"). A hearing on the First Interim Fee Application is currently scheduled for July 2, 2012.

**C.** **Post-Petition Debtor-in-Possession Financing Facility and Cash Collateral**

8. Shortly after the Petition Date, on November 15, 2011, the Debtor filed its *Motion for Interim and Final Orders Under 11 U.S.C. §§ 105(a), 361, 362, 363, and 364, Rules 2002, 4001, 6004, and Bankruptcy Rules 2002, 4001, and 9014 Authorizing Debtor, as Debtor-in-Possession, to (A) Use Cash Collateral and (B) Incur Postpetition Secured Indebtedness, (II) Granting Security Interests and Superpriority Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay and (V) Setting Final Hearing* [Dkt. No. 26] (the "DIP Motion"). On November 16, 2011, the Debtor and Redwood Capital Investments, LLC (the "DIP Lender") entered into that certain Senior Secured Super-Priority Debtor in Possession Loan Agreement (the "DIP Agreement"), pursuant to which the DIP Lender agreed to provide postpetition financing to the Debtor in the form of term loans in the aggregate principal amount of up to $12 million. On November 17, 2011, the Court entered an interim order, approving the DIP Agreement [Dkt. No. 67] (the "Interim DIP Order"), and on December 21, 2011, entered a final order (the "Final DIP Order"), which incorporated changes requested by various parties, including the Committee.

9. On November 17, 2011, the Court entered an *Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection Under 11 U.S.C. §§105, 361, and 363* [Dkt. No. 68] (the "Interim Cash Collateral Order"). On December 29, 2011, the Court entered its *Final Order Authorizing Use of Cash Collateral and Providing Adequate Protection Under 11 U.S.C. §§ 105, 361, and 363* [Docket No. 158] (the "Cash Collateral Order"), authorizing the Debtor to use the Prepetition Lenders' (as defined below) cash collateral in accordance with the established budget.

D.    <u>Reorganization Efforts and Sale</u>

10. Since the Petition Date, the Debtor with the assistance of DLA Piper and its other professionals worked diligently toward negotiating and formulating a plan of reorganization.  On February 15, 2012, the Debtor filed its *Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 204] and *Disclosure Statement for Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 203].  On that same day, the Debtor also filed its *Motion for Entry of an Order (A) Approving Disclosure Statement, (B) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan of Reorganization, (C) Scheduling a Confirmation Hearing, and (D) Approving Related Notice Procedur*es [Dkt. No. 205].

11. Shortly thereafter, on March 9, 2012, the Debtor filed its Motion for an Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets; (II) Approving Break-up Fee Payment; (III) Approving Procedures for the Cure, Assumption, and Assignment of Contracts; and (IV) Granting Related Relief   [Dkt. No. 232] (the "<u>Bidding Procedures Motion</u>").

12. On March 21, 2012, the Debtor filed its *Disclosure Statement for Debtor's Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Dkt. No. 268] (the "<u>Disclosure Statement</u>").

13. By its order, the Court approved the Debtor's Disclosure Statement [Dkt. No. 275]. On March 21, 2012, the Court also approved the Bidding Procedures Motion [Dkt. No. 264], with Chicago Senior Care, LLC ("<u>CSC</u>") serving as the stalking horse bidder pursuant to an asset purchase agreement (the "<u>Stalking Horse Agreement</u>"), under which CSC would pay a cash purchase price of $29.5 million for substantially all of the Debtor's assets.  In accordance with

the Bidding Procedures Motion, on April 12, 2012, the Debtor held an auction, at which CSC

emerged as the successful bidder offering a winning bid of $53.5 million, $24 million more than

its stalking horse bid.

14. On April 12, 2012, the Debtor and CSC entered into that certain Amended and

Restated Purchase and Sale Agreement (as may be amended, modified, supplemented or restated

from time to time, the "APA"), pursuant to which CSC is to purchase substantially all of the

Debtor's assets for $53.5 million.

15. On April 23, 2012, the Debtor filed its *Fifth Amended Plan of Reorganization Under

Chapter 11 of the Bankruptcy Code* [Dkt. No. 357] (the "Plan").  The Plan is a product of active

and good-faith negotiations between the Debtor, the Committee, The Bank of New York Mellon

Trust Company, N.A., as master trustee under that certain Master Trust Indenture dated July 1,

2010 and as series trustee under various series indentures (in all such capacities, the "Trustee"),

Bank of America, N.A, on behalf of itself and certain prepetition letter of credit banks ("Bank of

America"), and Wells Fargo Bank, N.A., as successor series trustee for the Series 2010A and

2010B fixed rate bonds (in such capacity, "Wells Fargo", and collectively with the Trustee and

Bank of America, the "Prepetition Lenders").

16. Pursuant to Section 2.2 of the Plan, "[a]ll parties seeking payment of Compensation

and Reimbursement Claims (i) shall file their respective final applications for allowance of

compensation for services rendered and reimbursement of expenses incurred by the date that is

forty-five (45) days after the Effective Date, (ii) shall be paid in full in such amounts as are

allowed by the Bankruptcy Court (a) upon the later of (i) the Effective Date, and (ii) the date

upon which the order relating to any such Allowed Compensation and Reimbursement Claim is

entered, or (b) upon such other terms as may be mutually agreed upon between the Holder of

such an Allowed Compensation and Reimbursement Claim and the Debtor or Plan Administrator, as the case may be." (<u>See</u> Plan at § 2.2). The Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval, subject to the requirement that invoices are distributed pursuant to the Interim Compensation Order. (<u>Id.</u>) Such payments made for services rendered or reimbursement of expenses for the period after the Confirmation Date and until the Effective Date are not subject to any holdback. (<u>Id.</u>)[2]

17. On April 27, 2012, the Court entered (i) an order [Dkt. No. 384] (the "<u>Confirmation Order</u>") confirming the Plan; and (ii) an order [Dkt. No. 383] (the "<u>Sale Order</u>") approving the sale of substantially all of the Debtor's assets to CSC pursuant to the APA.

18. The Debtor, CSC, Loyola University of Chicago ("<u>Loyola</u>"), the landlord for the property at which the Debtor operates its continuing care retirement community, and other parties in interest have been working tirelessly to consummate the transactions contemplated by the APA, which is anticipated to close on or before June 29, 2012.

19. DLA Piper files this Final Fee Application pursuant to (i) Section 2.2 of the Plan; and (ii) this Court's directive during the hearing held on June 12, 2012.

## <u>RELIEF REQUESTED</u>

20. The Interim Compensation Order provides that, in order to seek interim compensation, DLA Piper must submit monthly fee statements (the "<u>Monthly Fee Statements</u>") to the Fee Notice Parties (as defined in the Interim Compensation Order). If no objection to a Monthly Fee Statement is made within ten (10) days, or fifteen (15) days in case of the U.S.

---

[2] In accordance with the Plan, DLA Piper reserves its right to seek additional payments for services rendered on behalf of the Debtor for the period following the Confirmation Date without further order of this Court.

Trustee, after service of the Monthly Fee Statement, the Debtor is authorized to remit to DLA Piper sixty-five percent (65%) of the fees and one hundred percent (100%) of the expenses requested, with the remaining thirty-five percent (35%) of the fees requested retained as a holdback (the "Holdback").   Pursuant to the Interim Compensation Order, DLA Piper has submitted Monthly Fee Statements for each of the months covered by the Compensation Period. Moreover, as discussed above, the Interim Fee Application was filed with this Court on April 17, 2012.

21. No party has formally objected to DLA Piper's Monthly Fee Statements. The U.S. Trustee, however, informally raised with DLA Piper certain questions and concerns in respect of DLA Piper's compliance with the Fee Review Committee Billing Guidelines (the "UAL Guidelines") issued by the Joint Fee Review Committee of In re UAL Corp., Case No. 02-B-48191 (Bankr. N.D. Ill.).   The Debtor has worked closely with the U.S. Trustee over the past several months and believes that all of the U.S. Trustee's concerns with respect to compliance with the UAL Guidelines have been addressed.   Indeed, such communications have resulted in an additional voluntary aggregate reduction in fees of $44,717.00 and expenses of $6,877.08 for services performed by DLA Piper during the Compensation Period.   DLA Piper has adjusted the total amount of compensation and expense reimbursement it is requesting pursuant to this Final Fee Application to account for these reductions.

22. Pursuant to the Interim Compensation Order, DLA Piper submitted the following Monthly Fee Statements and has been paid the following amounts thereon:

| Monthly Fee Statement | Period | Fees and Expenses Requested | Fees and Expenses Paid | Fees and Expenses Accrued/Unpaid |
|---|---|---|---|---|
| First | 11/14/11-12/31/11 | $498,367.20 | $327,617.43 | $170,749.78 |
| Second | 1/1/12-1/31/12 | 236,253.03 | 155,959.18 | 80,293.85 |
| Third | 2/1/12-2/29/12 | 291,759.30 | 190,504.21 | 101,255.09 |
| Fourth | 3/1/12-3/31/12 | 444,475.65 | 290,646.54 | 153,829.11 |
| Fifth | 4/1/12-4/30/12 | 419,640.50 | 276,792.73 | 142,847.78 |

23. Upon approval of the Final Fee Application, the Debtor will be authorized to pay DLA Piper the remaining fees held back for payment with respect to each Monthly Fee Statement. Pursuant to Local Rule 5082-1(B)(2), DLA Piper states that the requested fees and expenses will be paid in accordance with the budget established under the DIP Agreement and approved by this court in the Cash Collateral Order. This is the second fee application that DLA Piper is submitting in this Chapter 11 Case. As mentioned above, the hearing with respect to the First Interim Fee Application is scheduled for July 2, 2012.

24. Now, by this Final Fee Application, DLA Piper seeks the entry of an order, substantially in the form of the Proposed Order (the "Proposed Order") attached hereto as **Exhibit A**, (i) allowing attorneys' fees on a final basis in the amount of $1,849,544.00 as reasonable compensation for 2,944 hours of actual and necessary legal services rendered by DLA Piper to the Debtor during the Compensation Period, (ii) allowing out-of-pocket expenses on a final basis in the amount of $36,279.68 as actual and necessary charges and disbursements incurred by DLA Piper while providing services to the Debtor during the Compensation Period, and (iii) authorizing and directing the Debtor to remit to DLA Piper the sum of $1,885,847.43, less amounts already paid by the Debtor in respect of the Compensation Period.

25. In accordance with Local Rule 5082-1(C), DLA Piper submits as **Exhibit B** each of its Monthly Fee Statements, which include itemized and detailed descriptions of the specific legal services rendered and out-of-pocket expenses incurred, reflecting (1) the date the work was

-9-

performed, (2) the name of the person performing the work, (3) a brief statement of the nature of

the work, (4) the time expended on the work in increments of one-tenth of an hour, and (5) the

fee charged for the worked described in the entry.[3]  Further, in accordance with Local Rule 5082-

1(B), DLA Piper provides the following narrative summary:

### NARRATIVE SUMMARY OF SERVICES RENDERED BY DLA PIPER

26. At the commencement of the Debtor's Chapter 11 Case, DLA Piper created different

matter numbers or subject-matter categories (the "Matter Categories"), to which its professionals

assigned the time billed by them, all of which are related to the tasks performed by DLA Piper

professionals on behalf of the Debtor.   All DLA Piper professionals kept a contemporaneous

record of the time spent rendering such services and, consistent with guidelines of the Office of

the United States Trustee, separated tasks in billing increments of one-tenth of an hour.   All of

the services performed by DLA Piper have been legal in nature and necessary for the proper

administration of the Chapter 11 Case.  As required by Local Rule 5082-1(B)(1)(a), a summary

of DLA Piper's Matter Categories and the total compensation requested in connection with each

Matter Category follows:

| Compensation by Matter Category | | | |
|---|---|---|---|
| November 14, 2011 through April 27, 2012 | | | |
| Codes | Project Category | Time | Total Individual Fees |
| B110 | Case Administration | 430.90 | $               264,006.50 |
| B130 | Asset Disposition | 859.10 | $               609,052.50 |
| B150 | Meetings of and Communications with Creditors | 42.20 | $                 30,324.00 |
| B160 | Fee/Employment Applications | 264.70 | $               121,149.50 |
| B170 | Fee/Employment Objections | 35.50 | $                 25,851.50 |
| B180 | Avoidance Action Analysis | 58.20 | $                 30,022.50 |

---

[3] It should be noted that DLA Piper's Fifth Monthly Fee Statement contains certain fees and expenses that were
incurred after the Compensation Period.  DLA Piper is not seeking payment for such fees and expenses that were
incurred after the Compensation Period in this Final Fee Application.  As noted above, pursuant to the Plan, the
Debtor is authorized to pay DLA Piper's fees and expenses for services rendered after the Confirmation Date
without further Court order.

| B185 | Assumption/Rejection of Leases and Contracts | 2.80 | $ | 1,330.00 |
|---|---|---|---|---|
| B190 | Other Contested Matters | 27.80 | $ | 19,204.00 |
| B195 | Non-Working Travel | 90.50 | $ | 37,192.50 |
| B210 | Business Operations | 77.10 | $ | 43,001.50 |
| B230 | Financing/Cash Collections | 147.40 | $ | 105,246.50 |
| B240 | Tax Issues | 51.60 | $ | 37,303.50 |
| B250 | Real Estate | 148.90 | $ | 96,342.00 |
| B310 | Claims Administration and Objections | 35.00 | $ | 17,570.00 |
| B320 | Plan and Disclosure Statement | 672.30 | $ | 411,947.50 |
| **Total** | | **2,944.00** | **$** | **1,849,544.00** |

27. As required by Local Rule 5082-1(B)(1)(e), a summary of the hourly rate for each professional for whom compensation is requested, with the total number of hours expended by each person and the total compensation sought for each person follows:

| **Timekeeper** | **Title** | **Hours** | **Rate** | **Amount** |
|---|---|---|---|---|
| Califano, Thomas R. | Partner | 457.90 | 885.00 | 405,241.50 |
| | | 56.00 | 442.50 | 24,780.00 |
| Morante, Paolo | Partner | 0.50 | 875.00 | 437.50 |
| South III, George B. | Partner | 533.80 | 850.00 | 453,730.00 |
| | | 22.50 | 425.00 | 9,562.50 |
| Jennings, Deborah E. | Partner | 13.70 | 805.00 | 11,028.50 |
| Murphy, Matt | Partner | 198.80 | 795.00 | 158,046.00 |
| Owen, Jeff | Partner | 129.50 | 775.00 | 100,362.50 |
| Geselbracht, Thomas F. | Partner | 1.90 | 750.00 | 1,425.00 |
| Kaye, Joshua | Partner | 0.50 | 720.00 | 360.00 |
| Sheeder, Frank E. | Partner | 5.70 | 710.00 | 4,047.00 |
| Otsuka, Greg | Partner | 21.00 | 690.00 | 14,490.00 |
| Ciner, Jonathan A. | Of Counsel | 2.20 | 755.00 | 1,661.00 |
| D'Angelo, Erin Carney | Of Counsel | 6.30 | 755.00 | 4,756.50 |
| Luukkonen, Mattias | Of Counsel | 1.40 | 650.00 | 910.00 |
| Rogers, Adam J. | Of Counsel | 13.60 | 595.00 | 8,092.00 |
| Dolly Jr., C. Craig | Associate | 6.10 | 685.00 | 4,178.50 |
| Graines, Gregg | Associate | 3.40 | 665.00 | 2,261.00 |
| Pearlman, Kimberlie A. | Associate | 4.30 | 645.00 | 2,773.50 |

EAST\48745514.4

| Timekeeper | Title | Hours | Rate | Amount |
|---|---|---|---|---|
| Dodson, Jesse W. | Associate | 1.50 | 630.00 | 945.00 |
| Novales, Valerie | Associate | 2.90 | 615.00 | 1,783.50 |
| Pfleeger, Jonathan G. | Associate | 23.80 | 630.00 | 14,994.00 |
| | | 67.90 | 605.00 | 41,079.50 |
| | | 76.50 | 580.00 | 44,370.00 |
| Dinsmore, Jennifer A | Associate | 1.30 | 560.00 | 728.00 |
| Rodrigues, Airina Lynn | Associate | 0.50 | 560.00 | 280.00 |
| Frumkin, Jacob | Associate | 704.80 | 475.00 | 334,780.00 |
| | | 263.30 | 395.00 | 104,003.50 |
| | | 12.00 | 237.50 | 2,850.00 |
| Cason, Stephanie | Associate | 1.50 | 470.00 | 705.00 |
| Koltko, Oksana | Associate | 112.00 | 415.00 | 46,480.00 |
| | | 6.10 | 345.00 | 2,104.50 |
| Schlesinger, Marc | Associate | 42.40 | 410.00 | 17,384.00 |
| Smyer, Bradley M. | Associate | 6.30 | 360.00 | 2,268.00 |
| Countryman, William Lee | Paralegal | 24.90 | 300.00 | 7,470.00 |
| | | 15.80 | 255.00 | 4,029.00 |
| Young, Wendy | Paralegal | 1.50 | 300.00 | 450.00 |
| Rodriguez, Evelyn | Paralegal | 10.40 | 270.00 | 2,808.00 |
| | | 3.60 | 255.00 | 918.00 |
| Sullivan, Jeremy M. | Librarian | 5.10 | 290.00 | 1,479.00 |
| Masters, Melinda | Research Staff | 1.90 | 300.00 | 570.00 |
| Smith, Bobby G. | Research Staff | 1.50 | 300.00 | 450.00 |
| Ramos, Illiana A | Project Assist. | 0.80 | 115.00 | 92.00 |
| Grabis, Maria | Project Assist. | 67.40 | 110.00 | 7,414.00 |
| | | 9.20 | 105.00 | 966.00 |
| **Totals** | | **2,944.00** | | **1,849,544.00** |

28. DLA Piper devoted approximately 1,962.3 hours, or 66.7%, of its time during the Compensation Period to the following three (3) matters, each of which alone was responsible for fees in excess of $200,000: Case Administration, Asset Disposition and Plan and Disclosure Statement. DLA Piper further devoted approximately 561 hours, or 19.1%, of its time during the Compensation Period to the following three (3) matters and incurred between $70,000 and

$200,000 in fees for each such matter: Fee and Employment Applications, Financing and Cash Collateral Matters and Real Estate.  DLA Piper devoted the remainder of its time (approximately 420.7 hours or 14.3% in the aggregate) to the following nine (9) matters and incurred less than $70,000 in fees for each such matter: Meetings of and Communications with Creditors, Fee and Employment Objections, Avoidance Action Analysis, Assumption/Rejection of Leases and Contracts, Other Contested Matters, Non-Working Travel, Business Operations, Tax Issues and Claims Administrations and Objections.   Pursuant to Local Rule 5082-1(B)(1)(b), set forth below, in descending order based on the fees expended, are descriptions of the Matter Categories in which DLA Piper professionals rendered legal services. Additionally, pursuant to Local Rule 5082-1(B)(1)(d), presented immediately below each Matter Category description is a chart listing the names and positions of DLA Piper professionals and paraprofessionals who performed work on each such Matter Category, their billing rates, the approximate hours worked and the total compensation sought for each professional's work.

<u>**Matters Greater than $200,000**</u>

**B130 - Asset Disposition:**

29. As this Court is aware and as mentioned above, the Debtor and its professionals have been focused on the sale of substantially all of the Debtor's assets from the outset of this Chapter 11 Case. Accordingly, during the Compensation Period, DLA Piper professionals devoted substantial resources to the sale process, and its services under this Matter Category can generally be grouped into the following: (a) investigating facts and researching legal issues concerning the sale of the Debtor's assets and business; (b) advising the Debtor regarding its duties and best courses of action; (c) conducting extensive negotiations with potentially interested parties regarding the price, terms of potential offers to purchase the Debtor's assets, and necessary confidentiality prerequisites; (d) coordinating due diligence efforts with the

Debtor and is financial advisor Houlihan Lokey Capital, Inc. ("Houlihan Lokey"); (e) communicating with, and frequently updating, the Debtor, the Prepetition Lenders, and the Committee regarding the Debtor's sale efforts and process; (f) drafting and negotiating asset purchase agreements and schedules; (g) developing and drafting the Bid Procedures Motion, as well as detailed proposed orders, bid procedures, auction and sale notices, notices to counterparties to contracts and leases to be assumed and assigned, and other exhibits related thereto; (h) coordinating and conducting the auction and corresponding with potential bidders; (i) coordinating the closing of the APA with CSC, including communications with regulatory authorities, J.P. Morgan Escrow Services and Medicare consultants, among others; and (j) negotiating and communicating with Loyola with respect to the alleged defaults listed in the *First Assignment and Assumption of Lease Agreement and Amendment to Lease Agreement*, filed with this Court on March 20, 2012 [Dkt. No. 259] (the "Lease Amendment").

30. More than fifty-two (52) potential buyers signed confidentiality agreements. DLA Piper assisted Houlihan Lokey in the negotiation of such confidentiality agreements. The deadline for interested parties to submit non-binding expressions of interest was December 15, 2011. Non-binding expressions of interest were required to, among other things, include a proposed purchase price, form of bid, breakdown of consideration, proof of financial wherewithal to consummate a transaction, and proof of ability to satisfy any conditions to assignment of the Lease (as defined below). The Debtor received six (6) non-binding expressions of interest from parties potentially interested in acquiring the Debtor's business (the "Interested Parties").

31. DLA Piper assisted the Debtor and its other professionals in analyzing these expressions of interest and determining which of the bidders should act as the stalking horse

bidder.   In addition, during the Compensation Period, DLA Piper began drafting appropriate pleadings in anticipation of an asset sale. Finally, DLA Piper assisted the Debtor in working with the Debtor's Prepetition Lenders, the Committee, the residents and Loyola throughout all aspects of the sale process.

32. DLA Piper also participated in numerous discussions and negotiations among the Debtor and its professionals, CSC, and the Committee and its professionals in respect of certain amendments to residency agreements required by the Stalking Horse Agreement.  Specifically, during the sale process, it became clear that the "waterfall" treatment of resident deposit refund liability, which was unique to the Debtor and inconsistent with the operation of similar projects, was a significant obstacle to a sale.  Indeed, the refund structure was identified as a concern by Interested Parties performing due diligence.  Pursuant to an originally drafted residency agreement, a resident who left The Clare was placed on a waiting list to receive a refund of his or her resident deposit.  The list was populated in chronological order of when a departing resident left The Clare.  Subsequently, residents on such list received a refund of their respective resident deposits in order once a sufficient amount of new resident deposits were received. As a result, the refund structure inadvertently incentivized early departure from The Clare in order to speed up the process of having one's name added to the refund list.  Therefore, the residency agreements needed to be modified to reflect the market normal refund structure, which provides for a resident deposit refund to be paid upon the re-occupancy and payment in full of a new residency deposit for the specific residence that was vacated.  The negotiation and agreement in respect of these resident agreements amendments, as well as the modification to the Ground Lease (discussed in more detail below), were critical in order for the Debtor to have a successful auction as they permitted the Debtor to obtain the maximum value for its assets.

-15-

33. The above efforts culminated in the successful auction held by the Debtor on April 12, 2012. As stated above, CSC was the successful bidder offering a winning bid of $53.5 million, which is $24 million over its initial cash purchase price offer.  Moreover, the Debtor and CSC are extremely close to closing the APA, which has required significant time and effort expended by DLA Piper on behalf of the Debtor.  In connection with the above services, DLA Piper expended approximately 859.10 hours and incurred $609,052.50 in fees.  A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B130 | Califano, Thomas R. | Partner | 885 | 185.80 | 164,433.00 |
| B130 | Morante, Paolo | Partner | 875 | 0.50 | 437.50 |
| B130 | South III, George B. | Partner | 850 | 200.70 | 170,595.00 |
| B130 | Jennings, Deborah E. | Partner | 805 | 13.70 | 11,028.50 |
| B130 | Murphy, Matt | Partner | 795 | 49.30 | 39,193.50 |
| B130 | Owen, Jeff | Partner | 775 | 82.60 | 64,015.00 |
| B130 | Geselbracht, Thomas F. | Partner | 750 | 0.10 | 75.00 |
| B130 | Kaye, Joshua | Partner | 720 | 0.50 | 360.00 |
| B130 | Sheeder III, Frank E. | Partner | 710 | 5.70 | 4,047.00 |
| B130 | D'Angelo, Erin Carney | Of Counsel | 755 | 6.30 | 4,756.50 |
| B130 | Luukkonen, Mattias | Of Counsel | 650 | 1.40 | 910.00 |
| B130 | Rogers, Adam J. | Of Counsel | 595 | 13.60 | 8,092.00 |
| B130 | Dolly Jr., C. Craig | Associate | 685 | 6.10 | 4,178.50 |
| B130 | Graines, Gregg | Associate | 665 | 2.40 | 1,596.00 |
| B130 | Dodson, Jesse W. | Associate | 630 | 1.50 | 945.00 |
| B130 | Novales, Valerie | Associate | 615 | 2.90 | 1,783.50 |
| B130 | Pfleeger, Jonathan G. | Associate | 605 | 13.60 | 8,228.00 |
| B130 | Rodrigues, Airina Lynn | Associate | 560 | 0.50 | 280.00 |

-16-

| B130 | Cason, Stephanie | Associate | 470 | 1.50 | 705.00 |
|---|---|---|---|---|---|
| B130 | Frumkin, Jacob | Associate | 395/475 | 14.50/228.60 | 114,312.50 |
| B130 | Koltko, Oksana | Associate | 415 | 12.20 | 5,063.00 |
| B130 | Schlesinger, Marc | Associate | 410 | 1.10 | 451.00 |
| B130 | Smyer, Bradley M. | Associate | 360 | 6.30 | 2,268.00 |
| B130 | Rodriguez, Evelyn | Paralegal | 270 | 2.80 | 756.00 |
| B130 | Ramos, Illiana A | Project Assist. | 115 | 0.80 | 92.00 |
| B130 | Grabis, Maria | Project Assist. | 110 | 4.10 | 451.00 |
| **B130 Total** | | | | **859.10** | **609,052.50** |

**B320 – Plan and Disclosure Statement**

34. DLA Piper professionals devoted significant time and resources researching applicable law related to numerous issues raised in the Plan and drafting salient terms of the Plan and Disclosure Statement, which are premised on the sale of substantially all of the Debtor's assets and business as a going concern.  Further, DLA Piper attorneys worked closely with the Debtor's senior management and financial advisors evaluating various reorganization alternatives and their financial implications, with the goal of formulating and soliciting a confirmable plan of reorganization.  The Debtor negotiated with its creditors in good faith and made significant progress toward developing a consensus on a range of issues regarding the Debtor's reorganization.   Specifically, DLA Piper formulated and drafted the Plan and the related Disclosure Statement, which were circulated to key constituencies for feedback regarding their basic structure and content.  As discussed above, the efforts resulted in entry of both the Confirmation Order and Sale Order by this Court on April 27, 2012.

35. Additionally, this Matter Category includes time spent on the following items: (a) preparing and filing a motion to approve the Disclosure Statement; (b) preparing for the hearings

on both approval of the Disclosure Statement and confirmation of the Plan; (c) discovery-related

tasks, including responding to the Committee's requests, attending a hearing with respect to the

same, drafting discovery requests and negotiating a fact stipulation for confirmation hearing

purposes; and (d) drafting myriad documents related to the Plan confirmation process, including

but not limited to declarations in support of the Plan, the Plan confirmation brief, the

Confirmation Order, the Sale Order and an omnibus reply to the various Plan objections.

36. In connection with the above services, DLA Piper expended approximately 672.30

hours and incurred $422,947.50 in fees.   A detailed breakdown of these services per legal

professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B320 | Califano, Thomas R. | Partner | 885 | 73.70 | 65,224.50 |
| B320 | South III, George B. | Partner | 850 | 114.00 | 96,900.00 |
| B320 | Murphy, Matt | Partner | 795 | 61.70 | 49,051.50 |
| B320 | Owen, Jeff | Partner | 775 | 3.90 | 3,022.50 |
| B320 | Geselbracht, Thomas F. | Partner | 750 | 1.80 | 1,350.00 |
| B320 | Pfleeger, Jonathan G. | Associate | 605 | 46.40 | 28,072.00 |
| B320 | Frumkin, Jacob | Associate | 475 | 278.80 | 132,350.00 |
| B320 | Koltko, Oksana | Associate | 415 | 69.60 | 28,884.00 |
| B320 | Schlesinger, Marc | Associate | 410 | 10.30 | 4,223.00 |
| B320 | Countryman, William Lee | Paralegal | 300 | 6.60 | 1,980.00 |
| B320 | Smith, Bobby G. | Research Staff | 300 | 1.50 | 450.00 |
| B320 | Grabis, Maria | Project Assist. | 110 | 4.00 | 440.00 |
| B320 Total | | | | 672.30 | 411,947.50 |

**B110 - Case Administration:**

37. DLA Piper professionals devoted significant time and resources providing services under this Matter Category, which involved a broad variety of administrative tasks necessary to ensure the efficient, smooth, and expeditious administration of the Debtor's Chapter 11 Case, including but not limited to the following: (a) advising the Debtor's management regarding administrative requirements for chapter 11 debtor-in-possession as well as the Debtor's rights and duties, noting proscribed, permitted, and required conduct; (b) ensuring the Debtor's compliance with its internal governance; (c) drafting and performing necessary research for "first day" motions; (d) reviewing "first day" orders and ensuring the Debtor's compliance with such orders; (e) communicating with representatives from the U.S. Trustee's office regarding first day motions and other case administration matters; (f) reviewing and revising the Debtor's monthly summaries of cash receipts and disbursements (monthly operating reports) in preparation for filing with the Court; (g) coordinating the investigation and preparation of service lists for different creditor constituencies by Epiq Bankruptcy Solutions, LLC ("Epiq"), the claims and balloting agent retained by the Debtor; (h) coordinating notice and service of dozens of motions, applications, and orders by Epiq; (i) drafting internal memoranda; (j) participating in status and strategy conferences where multiple motions, operational issues, and other matters were discussed, including daily and semi-weekly status calls with the Debtor and its professionals and frequent communications with the Prepetition Lenders and Loyola; (k) investigating and assisting in the preparation of the Debtor's bankruptcy schedules of assets and liabilities, statement of financial affairs, and related global notes; (l) preparing for numerous hearings and reviewing hearing transcripts; (m) performing necessary work related to resident deposits and a

related escrow; and (n) taking necessary steps to ensure confidentiality of certain information related to the Debtor's residents.

38. In connection with the above services, DLA Piper expended approximately 430.90 hours and incurred $264,006.50 in fees.   A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B110 | Califano, Thomas R. | Partner | 885 | 98.20 | 86,907.00 |
| B110 | South III, George B. | Partner | 850 | 67.00 | 56,950.00 |
| B110 | Murphy, Matt | Partner | 795 | 17.90 | 14,230.50 |
| B110 | Pfleeger, Jonathan G. | Associate | 580/630 | 61.20/4.30 | 38,150.00 |
| B110 | Dinsmore, Jennifer A. | Associate | 560 | 1.30 | 728.00 |
| B110 | Frumkin, Jacob | Associate | 395/475 | 79.60/41.10 | 50,964.50 |
| B110 | Koltko, Oksana | Associate | 345 | 6.30 | 2,187.50 |
| B110 | Countryman, William Lee | Paralegal | 260/300 | 17.40/14.50 | 8,886.00 |
| B110 | Rodriguez, Evelyn | Paralegal | 260 | 8.50 | 2,253.00 |
| B110 | Masters, Melinda F. | Research Staff | 300 | 1.90 | 570.00 |
| B110 | Sullivan, Jeremy M. | Librarian | 290 | 5.10 | 1,479.00 |
| B110 | Grabis, Maria | Project Assist. | 105/110 | 5.00/1.60 | 701.00 |
| B110 Total | | | | 430.90 | 264,006.50 |

## Matters Between $70,000 and $200,000

**B160 - Fee/Employment Applications**

39. In order to achieve the sale of substantially all of the Debtor's assets in a relatively short period of time, ensure seamless transition of services for residents, maintain operations, and comply with all bankruptcy requirements, the Debtor needed a highly-skilled, efficient, and coordinated team of professionals.   Thus, throughout the Chapter 11 Case, the Debtor with the

assistance of DLA Piper sought and obtained authority to retain certain professionals to advise the Debtor regarding issues arising in the course of this Chapter 11 Case. During the Compensation Period, the Debtor retained DLA Piper as its bankruptcy counsel, Houlihan Lokey as its investment banker and financial advisor, Deloitte Financial Advisory Services LLP ("Deloitte") as its restructuring advisor, and Epiq as its noticing and claims agent. In accordance with the retention of these professionals, DLA Piper prepared all appropriate affidavits, routine and supplemental disclosures, retention applications, and other necessary pleadings to assist the Debtor in the retention of these professionals, conducted initial and ongoing conflicts analyses under the applicable bankruptcy law, attended hearings on retention and compensation issues, and communicated with the U.S. Trustee. This Matter Category also includes time spent by DLA Piper preparing its Monthly Fee Statements and its Interim Fee Application pursuant to the procedures and standards set forth in the Interim Compensation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the U.S. Trustee Guidelines.

40. In connection with the above services, DLA Piper expended approximately 264.70 hours and incurred $121,149.50 in fees. A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B160 | Califano, Thomas R. | Partner | 885 | 4.10 | 3,628.50 |
| B160 | South III, George B. | Partner | 850 | 27.10 | 23,035.00 |
| B160 | Murphy, Matt | Partner | 795 | 20.30 | 16,138.50 |
| B160 | Pfleeger, Jonathan G. | Associate | 580/630 | 12.30/17.50 | 18,129.00 |
| B160 | Frumkin, Jacob | Associate | 395/475 | 28.70/59.20 | 39,456.50 |
| B160 | Koltko, Oksana | Associate | 415 | 29.20 | 12,118.00 |
| B160 | Schlesinger, Marc | Associate | 410 | 2.70 | 1,107.00 |

| B160 | Rodriguez, Evelyn | Paralegal | 270 | 1.90 | 513.00 |
|---|---|---|---|---|---|
| B160 | Countryman, William Lee | Paralegal | 255 | 1.50 | 423.00 |
| B160 | Grabis, Maria | Project Assist. | 105/110 | 4.20/56.00 | 6,601.00 |
| **B160 Total** | | | | **264.70** | **121,149.50** |

**B230 - Financing/Cash Collections**

41. During the past few years prior to the Petition Date, continuing care retirement communities, including The Clare, have suffered substantial declines in sales and occupancy and have faced various obstacles in their construction and development as a result of the struggling economy, the weakened credit environment, limited access to capital and declining real estate values, among other things.  Thus, the Debtor's ability to continue operations, maximize the value of its estate for the benefit of all creditors, as well as to successfully and within tight timeframes sell substantially all of the Debtor's assets and business as a going concern, while ensuring a seamless transition for its senior residents and maintaining their lifestyles, was contingent on the Debtor's access to DIP financing and access to the cash collateral of the Prepetition Lenders.

42. As stated above, prior to the Petition Date, the Debtor negotiated a debtor-in-possession financing facility with its DIP Lender, pursuant to which it agreed to provide postpetition financing to the Debtor in the form of term loans.  On November 16, 2011, the Debtor and the DIP Lender executed the DIP Agreement.  All obligations of the Debtor under the DIP Agreement have been secured by a first-priority priming lien and security interest on all assets of the Debtor that are subject to existing liens of the Prepetition Lenders (the "Existing Collateral").  The proceeds of the DIP Agreement have been used by the Debtor for the purpose of funding its costs and expenses associated with the Chapter 11 Case and to provide for the

Debtor's postpetition operating expenses and working capital needs during the Chapter 11 Case, all in accordance with an approved budget. However, in order to obtain its DIP financing, the Debtor engaged in extensive negotiations with the Prepetition Lenders and agreed to provide adequate protection comprised of, among other things, an agreement by the Debtor to reserve and not use cash on hand as of the Petition Date, the granting of replacement liens on post-petition collateral subject to senior liens of the DIP Lender, and payment of the reasonable professional fees and expenses incurred by the Prepetition Lenders. The Debtor also successfully negotiated with the Prepetition Lenders a carve out from the cash collateral budget providing for payments of the retained professionals' fees and expenses incurred during this Chapter 11 Case.

43. During this Compensation Period, DLA Piper led the Debtor's vigorous and successful efforts to obtain DIP financing and to negotiate substantial concessions by the Prepetition Lenders and rendered various services, including: (a) conducting numerous complex and extensive negotiations with the Debtor's DIP Lender and Prepetition Lenders; (b) preparing board resolutions; (c) drafting and revising various agreements, budgets, pleadings, and proposed orders; (d) preparing for and representing the Debtor at multiple interim and final court hearings; and (e) negotiating the terms of the interim and final DIP and cash collateral orders. DLA Piper professionals also spent significant time addressing concerns of the Committee and other constituencies in relation to the final relief requested by the Debtor under the DIP Facility and the Cash Collateral Order.

44. In connection with the above services, DLA Piper expended approximately 147.40 hours and incurred $105,246.50 in fees. A detailed breakdown of these services per legal professional is as follows:

EAST\48745514.4

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B230 | Califano, Thomas R. | Partner | 885 | 25.80 | 22,833.00 |
| B230 | South III, George B. | Partner | 850 | 68.70 | 58,395.00 |
| B230 | Murphy, Matt | Partner | 795 | 4.60 | 3,657.00 |
| B230 | Pearlman, Kimberlie A. | Partner | 645 | 4.30 | 2,773.50 |
| B230 | Frumkin, Jacob | Associate | 395/475 | 41.40/2.60 | 17,588.00 |
| **B230 Total** | | | | **147.40** | **105,246.50** |

**B250 – Real Estate**

45. During the Compensation Period, DLA Piper investigated, researched, and advised the Debtor on one of the central issues in this Chapter 11 Case – the Ground Lease Agreement executed by and between The Clare and Loyola, dated as of November 2, 2005 (the "Lease"). Pursuant to its original terms, the Lease was highly restrictive and precluded the transfer of the Lease to any potential buyer without the prior written consent of Loyola.  The Lease specifically provided that Loyola may withhold its consent to any assignment of the Lease unless the proposed assignee, among other things: (a) is a not-for-profit corporation that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code; and (b) is affiliated with the Roman Catholic Church or another denomination whose doctrines and teachings respect the Catholic heritage of Loyola and the Debtor.  None of the Interested Parties that indicated an interest in buying the Debtor's assets would have been able to satisfy these conditions. Moreover, the Lease contained certain other restrictions and limitations that were not viewed as "market" terms by the Interested Parties with whom the Debtor had had discussions.  Without certain modifications being made to the Lease, the Debtor believed that it would not be able to

find a purchaser for The Clare and that a liquidation would be the inevitable outcome of this

Chapter 11 Case, jeopardizing its creditors' recoveries and its senior residents' homes.

46. For the foregoing reasons, DLA Piper, together with the Debtor and Houlihan Lokey,

engaged in complex discussions with Loyola and CSC, and expended much time and energy

negotiating the Lease Amendment.   In pursuit of the Lease modifications, DLA Piper

professionals devoted a significant amount of time (a) reviewing the Lease, (b) ensuring the

Debtor's compliance with the Lease terms, (c) drafting and negotiating proposed modifications

of the Lease provisions, (d) researching various legal issues implicated by the Lease

modifications, (e) collaborating with the Debtor's senior management team and the Debtor's

other professionals with respect to various strategies and initiatives relating to the Lease

modifications negotiations, (f) discussing necessary Lease modifications with Loyola and CSC;

and (g) negotiating resolution of the defaults asserted by Loyola in the Lease Amendment.

Consequently, the negotiation and agreement in respect of the Lease modifications were critical

in order for the Debtor to obtain the maximum value for its assets.

47. In connection with the above services, DLA Piper expended approximately 148.90

hours and incurred $96,342.00 in fees.   A detailed breakdown of these services per legal

professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B250 | Califano, Thomas R. | Partner | 885 | 23.90 | 21,151.50 |
| B250 | South III, George B. | Partner | 850 | 20.00 | 17,000.00 |
| B250 | Owen, Jeff | Partner | 775 | 43.00 | 33,325.00 |
| B250 | Ciner, Jonathan A. | Of Counsel | 755 | 1.00 | 755.00 |
| B250 | Graines, Gregg | Associate | 665 | 1.00 | 665.00 |

| B250 | Frumkin, Jacob | Associate | 395 | 57.70 | 22,791.50 |
|------|----------------|-----------|-----|-------|-----------|
| B250 | Young, Wendy | Paralegal | 300 | 1.50 | 450.00 |
| B250 | Rodriguez, Evelyn | Paralegal | 255 | 0.80 | 204.00 |
| **B250 Total** | | | | **148.90** | **96,342.00** |

## Matters Less than $70,000

### B210 – Business Operations

48. Following the Petition Date, DLA Piper attorneys worked closely with the Debtor's management to provide advice and assist management to implement procedures with respect to its business operations to ensure compliance with provisions of the Bankruptcy Code and the first day orders entered by the Court.  Accordingly, this Matter Category involves time spent (a) advising the Debtor on vendor and resident issues; (b) identifying and responding to a variety of lien issues; (c) communicating with the Debtor's vendors and utility providers to ensure uninterrupted provision of services; and (d) strategizing with the Debtor's management team and other professionals regarding priorities and processes to ensure uninterrupted operations notwithstanding the Debtor's cash flow constraints.

49. During the Compensation Period, DLA Piper devoted time to reviewing issues relating to certain of the Debtor's suppliers and utility providers.  Much of this time was spent minimizing the impact of the bankruptcy filing on the Debtor's business.  This work included discussing and negotiating with the Debtor's vendors and utility providers that either refused to or threatened to refuse to uphold their contractual obligations after the bankruptcy filing.  DLA Piper also devoted time collaborating with and advising the Debtor's management team and financial advisors with respect to various restructuring strategies and initiatives relating to the stabilization of the Debtor's business operations in this Chapter 11 Case.

50. Lastly, DLA Piper attorneys spent a significant amount of time in this Matter Category advising and assisting the Debtor in seeking and obtaining authority to maintain in escrow all resident deposits that were escrowed as of the Petition Date and during the pendency of the Chapter 11 Case, deposit all resident deposits received postpetition into escrow, and refund such resident deposits under certain circumstances.  In this regard, DLA Piper drafted and filed the *Motion of Debtor for Order Authorizing the Debtor to Maintain Escrow Arrangements in the Ordinary Course and Refund Certain Resident Deposits* [Dkt. No. 8] and *Motion of Debtor for Order Authorizing Reservation Fee Refund in the Ordinary Course of Business* [Dkt. No. 239], which were approved respectively by the Court's *Order Authorizing the Debtor to Maintain Escrow Arrangements in the Ordinary Course and Refund Certain Resident Deposits* [Dkt. No. 185] and *Order Authorizing Reservation Fee Refund in the Ordinary Course* [Dkt. No. 376].  This endeavor helped to create a stable environment, in which the Debtor could operate post-petition.  Much time was expended communicating with the residents and the Committee on this issue.

51. In connection with the above services, DLA Piper expended approximately 77.10 hours and incurred $43,001.50 in fees.  A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B210 | Califano, Thomas R. | Partner | 885 | 8.00 | 7,080.00 |
| B210 | South III, George B. | Partner | 850 | 12.00 | 10,200.00 |
| B210 | Murphy, Matt | Partner | 795 | 1.30 | 1,033.50 |
| B210 | Pfleeger, Jonathan G. | Associate | 580/630/605 | 3.00/0.40/1.40 | 2,839.00 |
| B210 | Frumkin, Jacob | Associate | 395/475 | 27.80/21.20 | 21,051.00 |
| B210 | Schlesinger, Marc | Associate | 410 | 1.80 | 738.00 |

| B210 | Countryman, William Lee | Paralegal | 300 | 0.20 | 60.00 |
| **B210 Total** | | | | **77.10** | **43,001.50** |

## B240 – Tax Issues

52. During this Compensation Period, DLA Piper attorneys devoted their time researching and analyzing certain tax issues related to this Chapter 11 Case, including tax issues concerning the Debtor's current business operations and the various restructuring alternatives under consideration, including the sale of The Clare.  In addition, DLA Piper conducted research and advised the Debtor of tax implication of the resident tax escrow agreement, property tax issues and tax refund issues.

53. In connection with the above services, DLA Piper expended approximately 51.60 hours and incurred $37,303.50 in fees.   A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
| --- | --- | --- | --- | --- | --- |
| B240 | Califano, Thomas R. | Partner | 885 | 10.50 | 9,292.50 |
| B240 | South III, George B. | Partner | 850 | 8.70 | 7,395.00 |
| B240 | Murphy, Matt | Partner | 795 | 14.20 | 11,289.00 |
| B240 | Ciner, Jonathan A. | Of Counsel | 755 | 1.20 | 906.00 |
| B240 | Pfleeger, Jonathan G. | Associate | 630/605 | 5.00/2.30 | 4,541.50 |
| B240 | Frumkin, Jacob | Associate | 395/475 | 9.10/0.60 | 3,879.50 |
| **B240 Total** | | | | **51.60** | **37,303.50** |

## B195 - Nonworking Travel

54. This Matter Category includes time spent traveling while representing the Debtor during this Chapter 11 Case for purposes of attending several court hearings and meetings.  The

EAST\48745514.4

amounts presented for review and payment in this Final Fee Application reflect a voluntary reduction of one half of the charges for travel time.

55. In connection with the above services, DLA Piper expended approximately 90.50 hours and incurred $37,192.50 in fees.   A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B195 | Califano, Thomas R. | Partner | 442.5 | 56.00 | 24,780.00 |
| B195 | South III, George B. | Partner | 425 | 22.50 | 9,562.50 |
| B195 | Frumkin, Jacob | Associate | 237.5 | 12.00 | 2,850.00 |
| B195 Total | | | | 90.50 | 37,192.50 |

## B150 - Meetings of and Communications with Creditors

56. During the Compensation Period, this Matter Category includes time spent responding to numerous inquiries from the Debtor's creditors regarding the Debtor's chapter 11 filing and the motions filed and orders entered in this Chapter 11 Case as well as coordinating and collaborating with the creditor constituencies such as the Committee, the Debtor's Prepetition Lenders, and The Clare residents.  After the formal appointment of the Committee, DLA Piper devoted significant resources to educating the Committee and The Clare residents about the Debtor's history, corporate structure, financial situation, and business operations.  DLA Piper also has represented the Debtor in countless in-person and telephonic meetings with the Committee and Prepetition Lenders on a variety of topics.  At these meetings, DLA Piper has assisted the Debtor and its other professionals in providing critical information about the Debtor's businesses through detailed, high-level, and confidential presentations.   It is also important to note that throughout the Compensation Period, the Debtor encountered a high level

of resistance from the Committee.  For that reason, DLA Piper attorneys communicated regularly with the representatives of the Committee regarding the progress and status of the Chapter 11 Case. The Debtor believes that these efforts to keep the Committee informed have created a generally more cooperative atmosphere and constructive working relationship.

57. In connection with the above services, DLA Piper expended approximately 42.20 hours and incurred $30,324 in fees.  A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B150 | Califano, Thomas R. | Partner | 885 | 1.50 | 1,327.50 |
| B150 | South III, George B. | Partner | 850 | 1.60 | 1,360.00 |
| B150 | Murphy, Matt | Partner | 795 | 29.20 | 23,214.00 |
| B150 | Frumkin, Jacob | Associate | 395/475 | 3.50/6.40 | 4,422.50 |
| B150 Total | | | | 42.20 | 30,324.00 |

**B180 – Avoidance Action Analysis**

58. DLA Piper's services under this Matter Category primarily involve factual investigation, legal research, client advice and drafting a motion pursuant to Bankruptcy Rule 2004, as to potential avoidance actions concerning the 2010 restructuring transaction as well as transactions with Greystone Development Services VIII, Ziegler Equity Funding I, and various other entities that invested in The Clare.

59. In connection with the above services, DLA Piper expended approximately 58.20 hours and incurred $30,022.50 in fees.  A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B180 | Califano, Thomas R. | Partner | 885 | 10.00 | 8,850.00 |
| B180 | Frumkin, Jacob | Associate | 475 | 21.70 | 10,307.50 |
| B180 | Schlesinger, Marc | Associate | 410 | 26.50 | 10,865.00 |
| **B180 Total** | | | | **58.20** | **30,022.50** |

**B170 – Fee/Employment Objections**

60. During this Compensation Period, DLA Piper attorneys communicated with the U.S. Trustee regarding its Monthly Fee Statements and worked on amending such Monthly Fee Statements to conform them to the U.S. Trustee's comments.  DLA Piper also assisted the Debtor in opposing the Prepetition Lenders' objection to the retention of Houlihan Lokey as Debtor's restructuring advisor, including performing legal research, drafting legal pleadings and preparing for a retention hearing.

61. In connection with the above services, DLA Piper expended approximately 35.50 hours and incurred $25,851.50 in fees.  A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B170 | Califano, Thomas R. | Partner | 885 | 1.40 | 1,239.00 |
| B170 | South III, George B. | Partner | 850 | 10.40 | 8,840.00 |
| B170 | Otsuka, Greg | Partner | 690 | 21.00 | 14,490.00 |
| B170 | Frumkin, Jacob | Associate | 475 | 2.70 | 1,282.50 |
| **B170 Total** | | | | **35.50** | **25,851.50** |

EAST\48745514.4

**B190 – Other Contested Matters**

62. DLA Piper's services under this Matter Category primarily involve negotiations with parties in interest with respect to settlements, drafting of motions pursuant to Bankruptcy Rule 9019 and time spent with respect to discovery issues.

63. In connection with the above services, DLA Piper expended approximately 27.80 hours and incurred $19,204.00 in fees.   A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B190 | Califano, Thomas R. | Partner | 885 | 13.90 | 12,301.50 |
| B190 | South III, George B. | Partner | 850 | 0.80 | 680.00 |
| B190 | Frumkin, Jacob | Associate | 475 | 13.10 | 6,222.50 |
| **B190 Total** | | | | **27.80** | **19,204.00** |

**B310 – Claims Administration and Objections**

64. In this Matter Category, DLA Piper spent time preparing and filing an *Application of Debtor for Entry of an Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Dkt. No. 221] and the accompanying proposed order and identifying and evaluating potential claims against the Debtor.   Additionally, this Matter Category includes time spent with respect to bar date issues, cure amounts and proofs of claims.

65. In connection with the above services, DLA Piper expended approximately 35.00 hours and incurred $17,570.00 in fees.   A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B310 | Califano, Thomas R. | Partner | 885 | 1.10 | 973.50 |
| B310 | South III, George B. | Partner | 850 | 2.80 | 2,380.00 |
| B310 | Murphy, Matt | Partner | 795 | 0.30 | 238.50 |
| B310 | Pfleeger, Jonathan G. | Associate | 605 | 0.80 | 484.00 |
| B310 | Frumkin, Jacob | Associate | 475 | 27.00 | 12,825.00 |
| B310 | Koltko, Oksana | Associate | 415 | 0.80 | 332.00 |
| B310 | Countryman, William Lee | Paralegal | 300 | 0.50 | 150.00 |
| B310 | Grabis, Maria | Project Assist. | 110 | 1.70 | 187.00 |
| **B310 Total** | | | | **35.00** | **17,570.00** |

**B185 – Assumption/Rejection of Leases and Contracts**

66. DLA Piper's services under this Matter Category primarily involve drafting motions to assume and assign certain executory contracts, including but not limited to the Lease and the Residency Agreements.

67. In connection with the above services, DLA Piper expended approximately 2.80 hours and incurred $1,330 in fees. A detailed breakdown of these services per legal professional is as follows:

| Task Code | Name | Title | 2011 Rate / 2012 Rate | Time | Value |
|---|---|---|---|---|---|
| B185 | Frumkin, Jacob | Associate | 475 | 2.80 | 1,330.00 |
| **B185 Total** | | | | **2.80** | **1,330.00** |

68. Pursuant to Local Rule 5082-1(B)(1)(c), DLA Piper hereby submits its Final Fee Application. DLA Piper professionals expended approximately thirty-two (32) hours amounting to $13,990.00 of legal services in connection with the preparation of the First Interim Application. DLA Piper is seeking compensation for the preparation of this First Interim

Application pursuant to this Final Fee Application.  DLA Piper will seek compensation for the preparation of this Final Fee Application pursuant to the procedures set forth in Section 2.2 of the Plan.  As required by Local Rule 5082-1(B)(1)(f), DLA Piper further states that it has not previously sought or been allowed compensation in this Chapter 11 Case, other than pursuant to DLA Piper's Monthly Fee Statements and First Interim Fee Application.

**Reimbursement of Charges and Disbursements**

69. As disclosed in the Retention Application that the Court approved, it is DLA Piper's standard policy to charge its clients in all areas of practice for certain charges and disbursements incurred in connection with such clients' cases.  The charges and disbursements charged to clients include, among others, charges for filings, court fees, photocopying, computerized legal research, investigative searches, messenger services, postage for large mailings, vendor-hosted teleconferencing charges, travel expenses, and other charges customarily billed by law firms.

70. During the Compensation Period, DLA Piper disbursed the following sums for actual and necessary charges and disbursements in the rendition of professional services in the Chapter 11 Case, and requests that it be reimbursed therefor:

| Expense Summary | |
|---|---|
| November 14, 2011 through April 27, 2012 | |
| **Expense Category** | **Amount** |
| Local Transportation | $  3,935.62 |
| Out of Town Travel Expenses: Airfare | $  3,901.00 |
| Out of Town Travel Expenses: Lodging | $  3,011.96 |
| Out of Town Travel Expenses: Meals | $  2,746.09 |
| In Town Expenses: Meals | $     483.78 |
| Out of Town Travel Expenses: Transportation (Taxi, Rental Car, Parking) | $  2,280.06 |
| Local Transportation: Parking | $     177.00 |

| | |
|---|---|
| Delivery Services | $     704.41 |
| Filing/Recording Fees | $   1,882.58 |
| Transcripts | $   1,686.45 |
| Certified Copies/Certificate | $       16.00 |
| Off-site Duplicating | $       32.59 |
| Long Distance Telephone | $       56.32 |
| Color Photocopying | $     603.75 |
| Lexis Charges | $       27.15 |
| Westlaw Charges | $   8,969.96 |
| Duplicating | $   4,907.70 |
| Internet Services | $     225.54 |
| UCC Searches and Filings | $       98.41 |
| CourtLink | $       43.53 |
| On-line Researching | $     435.28 |
| Survey Copies | $       49.50 |
| Miscellaneous | $         5.00 |
| **Total** | **$   36,279.68** |

71. **Exhibit B** attached hereto, in addition to providing detail with respect to the fees billed in each Matter Category, shows the charges and disbursements incurred during the Compensation Period for each such Matter Category.  Furthermore, a brief description of each category is set forth below.  The above charges and disbursements are reasonable and are consistent with those incurred by other bankruptcy practitioners in other large, complex chapter 11 reorganization cases in this and other districts.

Filing/Court Fees: DLA Piper charges the Debtor filing fees associated with the filing of the Debtor's voluntary petitions, first day motions, and other pleadings in bankruptcy based on actual costs incurred.

UCC Searches/Filings: DLA Piper charges the Debtor for UCC searches and related document retrievals based on actual costs incurred.

Duplicating: DLA Piper charges 10 cents per page for black-and-white photocopying performed in-house, while photocopying by outside vendors is billed to the Debtor at the actual invoice amount.  During the Compensation Period, DLA Piper or its outside vendors photocopied a multitude of documents for the Debtor, such as, among others, first day orders, notices related to the filing of the Chapter 11 Case and various other pleadings and documents.

Computer Legal Research: DLA Piper charges for online computer research, such as Lexis-Nexis, Westlaw, and CourtLink, at the actual vendors' invoice amounts, which amounts have been reduced by discounts DLA Piper receives from its vendors.  With respect to online research, DLA Piper professionals spent time researching various issues in connection with the drafting of the pleadings and the sale of the Debtor's assets.

Court Reporting/Transcripts/Certified Copies: DLA Piper charges the Debtor for court reporting, transcripts, and certified copies based on the actual costs of obtaining court transcripts of all hearings in this Chapter 11 Case.

Courier/Express/Postage: DLA Piper charges the Debtor for outside messenger and express carrier services at the actual vendors' invoice amount, which frequently involved discounts negotiated by DLA Piper. Postage is charged at actual U.S. mail rates.  In order to meet certain court-imposed deadlines, it was necessary to provide notice to parties as quickly as possible.  Therefore, during the Compensation Period, DLA Piper professionals incurred various charges for courier, express delivery, and postage.

-36-

Specifically, most of these time-sensitive documents were delivered to certain entities required to receive certain notices and pleadings.

Internet Service: DLA Piper charges the Debtor for internet services based on the actual vendors' invoice amount.  These invoices relate to expenses incurred by DLA Piper attorneys while traveling to Chicago for client meetings.

Long Distance Telephone: DLA Piper charges the Debtor for long distance telephone calls, made as necessary to connect with the Debtor, Debtor's professionals, and other parties in interest in the Chapter 11 Case, based on actual costs charged by the vendor.

Travel Expenses / Transportation / Mileage Reimbursement / Lodging / Meals: Travel expenses, transportation, mileage reimbursement, lodging, and meals during the Compensation Period consist of expenses incurred as a result of numerous travels by DLA Piper professionals to and from the Debtor's hearings and meetings.

## REASONABLENESS OF FEES AND COSTS

72. Section 330 of the Bankruptcy Code governs compensation of professionals in a bankruptcy case and provides that, when determining the amount of reasonable compensation to award to a professional, the Court should consider the nature, extent and value of the services to the bankrupt estate and all other relevant factors. 11 U.S.C. § 330(a)(3).  In addition, Bankruptcy Rule 2016 provides that "an entity seeking interim or final compensation for services or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." FED. R. BANKR. P. 2016(a); see also In re Adventist Living Ctrs., Inc., 137 B.R. 692, 695 (Bankr. N.D. Ill. 1991).

73. This Court has stated that "[i]n reviewing fee applications, the bankruptcy court must address three issues: were the services that are the subject of the application properly

compensable; if so, were they actual and necessary; if so, how will they be valued?" In re Lifschultz Fast Freight, 140 B.R. 482, 485 (Bankr. N.D. Ill. 1992), citing In re Wildman, 72 Bankr. 700, 704 (Bankr. N.D. Ill. 1987).  In addition, with respect to expenses, this Court has required that an "[a]pplication should contain a detailed list of expenses including the date, the type and the amount." In re Convent Guardian Corp., 103 B.R. 937, 939 (Bankr. N.D. Ill. 1989). In determining whether an expense is necessary, this Court has stated that "an expense is necessary if it was incurred because it was reasonably needed to accomplish the proper representation of the client." Id.

74.  The Final Fee Application meets these requirements. First, DLA Piper's services are properly compensable.  The Court entered the Retention Order pursuant to 11 U.S.C. §§ 327(a), 330, 331 and 1107(b) authorizing the retention of DLA Piper as attorneys for the Debtor. Further, this Final Fee Application is being properly filed pursuant to 11 U.S.C. § 330. Therefore, DLA Piper's services are properly compensable. See In re Lifschultz, 140 B.R. 482, 485 (finding that where law firm was properly retained and law firm filed appropriate fee application, law firm's services were "properly compensable").

75.  Second, compensation is proper for services that are actual and necessary.  The Court found that "[s]ervices necessary under section 330 are those services that aid the professional's client in fulfilling its duties under the Code." Id.  Further, "[n]ecessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate." Id.  The services provided by DLA Piper were actual and necessary.  As set forth in this Final Fee Application, DLA Piper's attorneys provided multidisciplinary services to the Debtor on a daily

basis.  DLA Piper's services assisted the Debtor to engage in an extensive and time-consuming sales process, while attending to the needs of their employees and creditors.

76. Third, "[o]nce the court has determined that the services for which compensation is sought were properly compensable and actual and necessary, it must determine the value of those services." Id. at 488.  That is, "the court must evaluate what the 'actual, necessary services' were worth to the client, based upon the five criteria listed in section 330(a)(1)." Id. at 488.   In accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested herein by DLA Piper is fair and reasonable and fairly represents the value the Debtor received from DLA Piper's services, given (i) the nature of the bankruptcy case, (ii) its novelty and complexity, (iii) the time and labor required to represent the Debtor effectively, (iv) the time limitations imposed by the bankruptcy case, (v) the nature and extent of the services rendered, (vi) DLA Piper's experience, reputation and ability, (vii) the value of DLA Piper's services, and (viii) the cost of comparable services other than in a case under title 11 of the United States Code.

77. Nature, Complexity, and Limited Expediency of the Case. To maximize the value of the Debtor's estate, after extensive analysis of the Debtor's business, the Debtor and its professionals pursued an asset disposition strategy with the goal of achieving the maximum value for the Debtor's assets.  This has required extensive and time-consuming negotiations with the Prepetition Lenders and other parties in interest that were necessary in order to effectuate the Debtor's asset disposition strategy. DLA Piper professionals have assisted the Debtor by employing a streamlined case management structure that consisted of a small, core team and assigned various attorneys to other discrete tasks to avoid the performance of duplicative or unnecessary work.  This has required DLA Piper and other professionals involved in this Chapter

11 Case to use every effort to seek to work quickly and efficiently in assisting the Debtor in meeting its goals.

78. Experience of DLA Piper. DLA Piper has assigned the work performed in this Chapter 11 Case to attorneys having the experience and specialization to perform the services required efficiently and properly.  The partners, counsel, and associates providing the services for which compensation is sought pursuant to this Final Fee Application specialize in the fields of insolvency, corporate finance, and litigation.  Additionally, as noted in the Retention Application, DLA Piper has specialized experience representing continuing care retirement communities in chapter 11 cases.  Moreover, DLA Piper, as a general practice, seeks to use the services of law clerks and legal assistants supervised by attorneys whenever appropriate to limit costs and more efficiently utilize the services of attorneys.  DLA Piper has followed this practice with respect to the services rendered to the Debtor wherever possible.

79. Comparable services. DLA Piper's rates are consistent with rates charged to other clients in non-bankruptcy matters.  Moreover, its rate structure was disclosed clearly in its Retention Application, which the Court approved and as to which no constituents objected.  The amounts sought by DLA Piper are consistent with the fees, charges and disbursements incurred by other chapter 11 debtors in cases of similar size, complexity and duration.  Accordingly, the cost of comparable services supports the Final Fee Application, and the services performed during the Application Period more than warrant the allowance of compensation, particularly in view of the results achieved.

80. Compliance with Guidelines. DLA Piper believes that this Final Fee Application, together with the attachments hereto, substantially complies in all material respects with the United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330 issued January 30, 1996 (the "UST Guidelines") and the UAL Guidelines (together with the UST Guidelines, the "Fee Guidelines"). To the extent this Final Fee Application does not comply in every respect with the requirements of the Fee Guidelines, DLA Piper respectfully requests a waiver for any such technical noncompliance.

WHEREFORE, DLA Piper respectfully requests that the Court enter an order (a) allowing final compensation of $1,849,544.00 for professional services rendered by DLA Piper as attorneys for the Debtor during this Compensation Period, plus reimbursement of actual and necessary charges and disbursements incurred in the sum of $36,279.68; (b) authorizing and directing the Debtor to pay DLA Piper the amount of $1,885.847.43 in full settlement of the sums accrued during the Compensation Period; and (c) granting such other and further relief as is just and equitable under the circumstances.

Dated: Chicago, Illinois
     June 22, 2012

/s/ *Matthew M. Murphy*
Matthew M. Murphy (ARDC No. 06208157)
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone:  (312) 368-4000
Facsimile:   (312) 236-7516

Thomas R. Califano, NY Bar No. 2286144
George B. South III, NY Bar No. 2446771
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
Telephone:  (212) 335-4500
Facsimile:   (212) 335-4501

*Attorneys for The Clare at Water Tower*
*Debtor and Debtor-in-Possession*