# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| The Clare at Water Tower, | ) Case No. 11-46151 |
| | ) Hon. Timothy A. Barnes |
| Debtor. | ) |
| | ) Hearing Date: July 2, 2012 at 2:00 p.m. |
| | ) (Central Time) |
| | ) Objections Due: June 29, 2012 at 5:00 p.m. |
| | ) (Central Time) |

## NOTICE OF FINAL FEE APPLICATION

**PLEASE TAKE NOTICE THAT ON JUNE 22, 2012, THE FINAL FEE APPLICATION OF HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTOR WAS FILED, SEEKING ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES (THE "FINAL FEE APPLICATION").**

PLEASE TAKE FURTHER NOTICE THAT on July 2, 2012 at 2:00 p.m. (Central Time), a hearing on the Final Fee Application shall take place before the Honorable Timothy A. Barnes or before any other judge who may be sitting in his place and stead, in Courtroom 642 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, at which time you may appear if you deem fit.

Dated: June 22, 2012

Matthew M. Murphy (ARDC No. 06208157)
DLA PIPER LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
JUN 2 2 2012
KENNETH S. GARDNER, CLERK
PS REP. - CM

Thomas R. Califano, NY Bar No. 2286144
George B. South III, NY Bar No. 2446771
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

/s/ Matthew M. Murphy
Attorneys for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| The Clare at Water Tower, | ) |
| | ) Case No. 11-46151 |
| Debtor. | ) |
| | ) |
| | ) Hon. Timothy A. Barnes |

## FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION OF FEES AND EXPENSES OF HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTOR FOR THE PERIOD OF NOVEMBER 14, 2011 THROUGH APRIL 27, 2012[1]

| | |
|---|---|
| Name of Applicant: | Houlihan Lokey Capital, Inc. |
| Period Covered: | November 14, 2011 through April 27, 2012 |
| Authorized to Provide Professional Services to: | The Clare at Water Tower |
| Date of Retention Order: | December 21, 2011, retroactive to and effective as of November 14, 2011 |
| Amount of Compensation sought as actual, reasonable and necessary: | $2,407,500.00 (consisting of $395,000.00 in Monthly Fees plus $250,000.00 for the Financing Fee plus $1,762,500.00 for the Transaction Fee) |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $10,417.45 |
| Previous Applications: | Yes |
|    First Interim Fee Application | $554,919.90 (filed April 17, 2012) |
|    Interim Transaction Fee Application | $1,762,500.00 (filed May 11, 2012) |

This is a:   ___ Interim   _X_ Final Application.

---

[1] The Houlihan Lokey fee structure includes monthly retainers payable on the twentieth day of each month.

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| The Clare at Water Tower, | ) |
| | ) Case No. 11-46151 |
| Debtor. | ) |
| | ) |
| | ) Hon. Timothy A. Barnes |

**FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION OF FEES AND EXPENSES OF HOULIHAN LOKEY CAPITAL, INC. AS INVESTMENT BANKER TO THE DEBTOR FOR THE PERIOD OF NOVEMBER 14, 2011 THROUGH APRIL 27, 2012[1]**

Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), investment banker for the above-captioned debtor and debtor in possession (the "Debtor"), hereby submits this *Final Application for Allowance and Payment of Compensation of Fees and Expenses of Houlihan Lokey Capital Inc. as Investment Banker to the Debtor* (the "Final Application") for the period of November 14, 2011 through April 27, 2012 (the "Final Application Period"). Houlihan Lokey hereby applies, pursuant to § 328(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 187) entered on January 11, 2012 (the "Interim Compensation Order"), for an order (a) allowing on a final basis, fees in the amount of $2,407,500.00, consisting of $395,000.00 in Monthly Fees plus $250,000.00 for the Financing Fee related to the DIP Financing Facility raised (as defined in paragraph five below) (the "Financing Fee") plus $1,762,500.00 for the Transaction Fee earned by Houlihan Lokey as a result of the Sale Transaction (as defined in paragraph seven below) (the "Transaction Fee"), and reimbursement of expenses in the amount

---

[1] The Houlihan Lokey fee structure includes monthly retainers payable on the twentieth day of each month.

of $10,417.45 (collectively the "Total Fees and Expenses"); and (b) authorizing and directing the Debtor to pay to Houlihan Lokey any portion of the Total Fees and Expenses that have not been previously paid. In support of this Final Application, Houlihan Lokey respectfully represents as follows:

## I.    JURISDICTION

1. The Court has jurisdiction over this Final Application pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Debtor's chapter 11 case and this Final Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and the local bankruptcy rules.

## II.   BACKGROUND

2. On November 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in possession of its property and is managing its business, as debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The factual background relating to the Debtor and the commencement of its chapter 11 case is set forth in detail in the Declaration of Judy Amiano in Support of Chapter 11 Petition and First Day Motions (Docket No. 7).

4. On October 20, 2011, the Debtor retained Houlihan Lokey to serve as investment banker and has employed Houlihan Lokey from October 20, 2011 through and including the date hereof. A copy of the Court's order entered on December 21, 2011, authorizing the Debtor's retention of Houlihan Lokey (the "Retention Order") retroactive to November 14, 2011, is attached hereto as Exhibit A.

5. On November 17, 2011, the Court entered an order (Docket No. 67) authorizing the Debtor to obtain debtor in possession financing (the "DIP Financing Facility") on an interim basis. On

2

December 21, 2011, the Court entered a final order (Docket No. 151) authorizing the Debtor to borrow up to $12 million under its DIP Financing Facility.

6. On March 21, 2012, the Court issued an order (Docket No. 264) approving the Debtor's bidding procedures for the sale of substantially all of its assets.

7. On April 27, 2012, the Court entered an order (the "Sale Order") (Docket No. 383) approving (i) the sale of substantially all of the Debtor's assets to Chicago Senior Care, LLC ("CSC") (the "Sale Transaction"); (ii) the procedures governing the assumption and assignment of contracts; and (iii) related relief.

8. On April 27, 2012 (the "Confirmation Date"), the Court entered an order (the "Confirmation Order") (Docket No. 384) approving the Debtor's Fifth Amended Plan of Reorganization.

## III. TERMS AND CONDITIONS OF COMPENSATION OF HOULIHAN LOKEY

9. The terms and conditions of Houlihan Lokey's engagement in these cases are based upon:

   i) Houlihan Lokey's engagement letter agreement with the Debtor dated October 20, 2011 (the "Engagement Agreement"), a copy of which is annexed hereto as Exhibit B and included in the Debtor's *Application Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016 Authorizing Employment and Retention of Houlihan Lokey Capital, Inc. as Investment Banker and Financial Advisor to the Debtor nunc pro tunc to the Petition Date* (Docket No. 86); and

   ii) The Retention Order, which authorizes the Debtor's retention of Houlihan Lokey and modifies certain terms of the Engagement Agreement.

10. As disclosed in the *Declaration of Andrew Turnbull in Support of the Debtor's Application for Order Authorizing the Employment and Retention of Houlihan Lokey Capital, Inc. as*

3

*Investment Banker to the Debtor, nunc pro tunc to the Petition Date* (Docket No. 86) and the *Supplemental Declaration of Andrew Turnbull* (Docket No. 397), Houlihan Lokey does not hold or represent any interest adverse to the Debtor's estates and is a disinterested person as that term is defined in §101(14) of the Bankruptcy Code.

11. On December 21, 2011, the Court signed a final order approving the Debtor's retention of Houlihan Lokey, retroactive to the Petition Date, as its investment banker and financial advisor. The Retention Order authorizes the Debtor to compensate Houlihan Lokey in accordance with the procedures set forth in §§ 327(a) and 328(a) of the Bankruptcy Code, the Bankruptcy Rules, local bankruptcy rules, the guidelines established by the Office of the United States Trustee (the "Guidelines") and such other procedures as may be fixed by order of the Court, provided that the United States Trustee has the right to evaluate the Monthly Fees and Transaction Fee subject to the reasonableness standard of section 330 of the Bankruptcy Code as set forth in the Retention Order. With regards to the payment of any Transaction Fees, the tenth paragraph of the Retention Order sets forth that "[a]ll…Transaction Fees…to be paid to Houlihan Lokey shall be subject to prior approval of this Court."

12. As set forth in paragraph 4 of the Retention Order, Houlihan Lokey and its professionals are excused from maintaining time records in connection with the services rendered pursuant to its Engagement Agreement.

13. As set forth in Section 3(i) of the Engagement Agreement, Houlihan Lokey is owed a non-refundable cash fee of $75,000 due on the twentieth day of each month (the "Monthly Fee") earned by Houlihan Lokey in consideration of performing the services as described in the Engagement Agreement.

14. Section three of the Engagement Agreement and the eleventh paragraph of the Retention Order memorialize the terms of compensation upon the closing of a sale transaction of all or substantially all of the Debtor's assets.

15. As described more fully in both the Engagement Agreement and the Retention Order, based upon the closing of a sale of substantially all of the Debtor's operations to CSC, Houlihan Lokey shall be entitled to receive a Transaction Fee, calculated as follows (defined terms not otherwise defined herein shall have the meanings given such terms in the Engagement Agreement):

   i) Minimum Transaction Fee of $2,000,000; plus,

   ii) For Aggregate Gross Consideration ("AGC") from $80 million to $100 million, 1.25% of such incremental AGC; plus,

   iii) For AGC from $100 million to $120 million, 2% of such incremental AGC; plus,

   iv) For AGC in excess of $120 million, 4% of such excess AGC;

   v) $50,000 of the Financing Transaction Fee paid to Houlihan Lokey shall be credited against a Sale Transaction Fee; and,

   vi) Commencing with the fourth Monthly Fee and all monthly fees thereafter, fifty percent (50%) of the Monthly Fees shall be credited against a Sale Transaction Fee to which Houlihan Lokey becomes entitled, it being understood and agreed that no Monthly Fee shall be credited more than once and in no event shall a Sale Transaction Fee be reduced below zero.

16. Houlihan Lokey's efforts in this Chapter 11 case, as described in more detail below, resulted in an extremely successfully sale process that generated a final sale price 81% higher than the stalking horse bid. The Sale Transaction Fee earned is $1,762,500.00 (net of applicable credits), the calculation of which is attached hereto as Exhibit C.

17. As detailed in the Retention Application, the terms of the Engagement Agreement were comparable to the terms of Houlihan Lokey and other investment bankers agreed-upon in similar engagements, both in and outside of bankruptcy.

5

IV. **RELIEF REQUESTED**

18. Houlihan Lokey seeks allowance on a final basis and authorization for payment of Houlihan Lokey's Total Fees and Expenses as well as authorization for payment of any portion of the Total Fees and Expenses that has not been previously paid. The Total Fees and Expenses sought are reasonable and appropriate under sections 328(a) and 330 (with respect to the United States Trustee) of the Bankruptcy Code.

### Fees and Expenses Incurred and Payments Made

19. Houlihan Lokey received $77,000 in payments prior to the Petition Date to cover the monthly fee due on October 20, 2011 and expenses, of which $2,000 was a retainer to cover reimbursable expenses incurred by Houlihan Lokey prior to the Petition Date (the "Expense Retainer"). Any excess Expense Retainer not applied to pre-petition reimbursable expenses shall be credited against amounts owed by the Debtor to Houlihan Lokey.

20. Pursuant to the Interim Compensation Order, professionals in the Debtor's chapter 11 case are required to submit a statement of fees and expenses (a "Monthly Statement") to the Debtor and other parties-in-interest for payment on a monthly basis. The Debtor is directed to pay 65% of the fees and 100% of the expenses requested in the Monthly Statement of professionals to which no objection has been asserted by the Debtor or other parties-in-interest.

21. Consistent with the Interim Compensation Order, Houlihan Lokey billed the Debtor: $2,407,500.00 for fees (consisting of $395,000.00 in Monthly Fees, $250,000.00 Financing Fee related to the DIP Financing Facility and $1,762,500.00 Transaction Fee) and $10,417.45 for expenses. As of the filing of this Final Application, Houlihan Lokey has received payments of: (a) $419,250.00 for Monthly Fees and the Financing Fee; and (b) $8,117.47 for expenses during the Final Application Period.

6

22. On April 17, 2012, Houlihan Lokey filed its *First Application for Interim Compensation of Fees and Expenses* (Docket No. 331) (the "First Interim Fee Application") seeking approval of $550,000.00 in fees and $4,919.90 in expenses. On May 11, 2012, Houlihan Lokey filed its *Application for Payment of the Transaction Fee* (Docket No. 399) (The "Transaction Fee Application") seeking approval of the $1,762,500 Sale Transaction Fee (collectively with the First Interim Fee Application, the "Interim Fee Applications"). A hearing has not yet been held on the Interim Fee Applications. The Interim Fee Applications have been continued by the Court from time to time and are currently scheduled for a hearing on July 2, 2012.

|  | Period Covered (a) | Amounts Earned / Incurred | | Amounts Paid | |
|---|---|---|---|---|---|
|  |  | Fees | Expenses | Fees | Expenses |
| **First Interim Application (Docket No. 331):** | | | | | |
| 1st Invoice (b)(c) | 11/20/11 – 01/19/12 | $ 400,000.00 | $ 2,681.30 | $ 260,000.00 | $ 2,861.30 |
| 2nd Invoice (c) | 01/20/12 – 02/19/12 | 75,000.00 | 560.63 | 48,750.00 | 380.63 |
| 3rd Invoice | 02/20/12 – 03/19/12 | 75,000.00 | 1,677.97 | 48,750.00 | 1,677.97 |
| **Total First Interim Application** | | 550,000.00 | 4,919.90 | 357,500.00 | 4,919.90 |
| | | | | | |
| **Final Application (contained herein):** | | | | | |
| 4th Invoice | 03/20/12 – 04/19/12 | 75,000.00 | 1,940.83 | 48,750.00 | 1,940.83 |
| 5th Invoice | 04/20/12 – 04/27/12 (d) | 20,000.00 | 1,256.74 | 13,000.00 | 1,256.74 |
| Unposted Pre-Confirmation Date Expenses (e) | | 0.00 | 2,299.98 | 0.00 | 0.00 |
| **Total** | | 95,000.00 | 5,497.55 | 61,750.00 | 3,197.57 |
| | | | | | |
| **Interim Transaction Fee Application (Docket No. 399):** | | | | | |
| Sale Transaction Fee (f) | | 1,762,500.00 | 0.00 | 0.00 | 0.00 |
| | | | | | |
| **Total Final Fee Application** | | $ 2,407,500.00 | $ 10,417.45 | $ 419,250.00 | $ 8,117.47 |

(a) The Houlihan Lokey fee structure includes monthly retainers payable on the twentieth day of each month.
(b) Invoice consists of two monthly fees totaling $150,000.00 and a $250,000.00 Financing Fee related to the DIP Financing Facility raised.
(c) The Debtor overpaid for expenses in the 1st invoice by $180.00 and offset that amount with a corresponding underpayment when it paid the 2nd invoice.
(d) Monthly Fee has been prorated through the Confirmation Date.
(e) Includes expenses incurred prior to the Confirmation Date that had not yet posted to Houlihan Lokey's accounting system as of the date the 5th Invoice was generated.
(f) Calculation as set forth in the Transaction Fee Application and attached hereto as Exhibit C

23. These payments were applied to Houlihan Lokey's fees and expenses in accordance with the Interim Compensation Order. The sources of these payments were either the Debtor's operating cash or borrowings under the Debtor's DIP Financing Facility.

24. As set forth in Section 2.2 of the Fifth Amended Plan of Reorganization, the Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for further Bankruptcy Court approval. Assuming the Sale Transaction closes on June 29, 2012 and Houlihan Lokey's retention is terminated as of this date, in addition to the amounts set forth herein, Houlihan Lokey will have earned $155,000.00 in additional Monthly Fees (prior to any applicable offsets) after the Confirmation Date and in accordance with its Engagement Agreement and $142,500.00 net of the applicable Transaction Fee offsets[2]. Additionally, Houlihan Lokey will seek reimbursement of any expenses not included herein that posted internally after the Confirmation Date.

25. Houlihan Lokey further states that it has not shared any of the compensation that it has previously received in connection with this case with any other entity. Furthermore, no such agreement or understanding exists between Houlihan Lokey and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with Houlihan Lokey's representation of the Debtor in the above-captioned case.

V. **COMPENSATION OF FEES**

26. In accordance with sections 105, 327(a) and 328(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2016, Houlihan Lokey makes this Final Application for allowance of compensation for professional services rendered to the Debtor in the amount of $2,407,500.00 and

---

[2] The Interim Fee Application relating to Houlihan Lokey's Sale Transaction Fee filed on May 11, 2012 includes credits for all Monthly Fees through June 19, 2012. Therefore Monthly Fees due to Houlihan Lokey for periods on or after June 20, 2012 through the closing of the Sale Transaction will be subject to monthly crediting of 50%. Assuming closing of the Sale Transaction on June 29, 2012, Houlihan Lokey's pro-rated portion of the Monthly Fee due on June

8

reimbursement of expenses incurred in connection with those services of $10,417.45.

27.    Houlihan Lokey has rendered substantial and valuable professional services on behalf of the Debtor that has resulted in a significant benefit to the creditors of the Debtor's estate and that are beneficial to the administration of this chapter 11 case. Houlihan Lokey respectfully submits that its services were provided with the requisite level of skill and are being performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problems, issues and tasks addressed. Houlihan Lokey has charged its customary fees, which are reasonable based on the customary compensation charged by comparably skilled professionals in cases other than cases under this title. The amount sought in compensation is in line with awards in similar cases and is commensurate with the professional standing, ability and expertise of Houlihan Lokey and the professionals who have participated in this case. Accordingly, the compensation requested herein reflects the reasonable value of the services provided to the Debtor.

## VI.    SUMMARY OF SERVICES PROVIDED BY HOULIHAN LOKEY

28.    Houlihan Lokey is an international investment banking/financial advisory firm with fourteen offices worldwide and more than eight hundred employees. Houlihan Lokey provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. Houlihan Lokey is one of the leading advisors and investment bankers to troubled companies inside and outside of bankruptcy, as well as to their bondholders, banks, other secured and unsecured creditors, official creditor committees, acquirers, equity sponsors and other parties-in-interest involved with financially challenged companies. Houlihan Lokey's Financial Restructuring Group has approximately 145 professionals worldwide dedicated to providing restructuring and other financial advisory services. Houlihan Lokey's Financial Restructuring Group has advised on over 900 transactions

---

20, 2012 would be $25,000 less 50% (or $12,500 of credits).

with aggregate debt claims in excess of $1.5 trillion over the past ten years. The Debtor selected Houlihan Lokey as its investment banker because of its extensive and diverse experience, knowledge, and reputation in the restructuring field, its familiarity and experience in restructuring senior living and healthcare operations, its understanding of the many complex issues involved in these cases, and generally because the Debtor believed that Houlihan Lokey was well-qualified to provide the investment banking and financial advisory services in this case.

29. The following primary professionals from Houlihan Lokey's Restructuring and Healthcare practices have performed substantial services to the Debtor in this case, although a number of other professionals worked on this engagement:

>Andrew Turnbull – Managing Director, Restructuring
>
>Scott Jackson – Senior Vice President, Restructuring
>
>Matt Ryan – Senior Vice President, Healthcare
>
>Brian Cercek – Associate, Restructuring
>
>Yury Sandovich – Financial Analyst, Restructuring
>
>Carl Howe – Financial Analyst, Healthcare

30. Houlihan Lokey's work on behalf of the Debtor, which culminated in a successful Sale Transaction for the benefit of the Debtor and all of its constituents, included, but was not limited to:

> a. **M&A Solicitation Process:** Houlihan Lokey commenced a full M&A marketing process for the Debtor's operations, which included, but was not limited to: identifying potential investors, preparing a detailed information memorandum (which consisted of information regarding the Debtor's business, an overview of historical and projected financial results, an overview of the continuing care retirement community industry and assessments of the Debtor's business),

managing an on-line data room with over 11,500 pages of information, coordinating management meetings, responding to a large number of due diligence requests, coordinating communication with buyers, counsel and Loyola regarding lease assignment and completing various other diligence-related activities for those parties that demonstrated an interest in acquiring the Debtor's businesses. As part of the M&A process, Houlihan Lokey contacted approximately 118 potential investors, including strategic not-for-profit and for profit investors, real estate and private equity investors and REITs. Of those contacted, 60 executed confidentiality agreements and received additional information. As part of each investor's diligence efforts, Houlihan Lokey coordinated with Debtor's management, the Debtor's various financial and legal advisors and representatives of the interested parties to ensure that all potential buyers were provided all necessary and appropriate information in a timely manner. Through frequent contact with the various parties, Houlihan Lokey served as the central role in providing all of the necessary information regarding the Debtor's operations.

b. **Negotiation of a Stalking-Horse Sale Agreement:** The Debtor received non-binding expressions of interest from six (6) parties who indicated an interest in potentially acquiring the Assets (collectively, the "Interested Parties"). Based upon the non-binding expressions of interest that were received, Houlihan Lokey assisted the Debtor with conducting management presentations and facility tours with five (5) of the Interested Parties. After the management presentations concluded, the Debtor received an offer from one of the Interested Parties in the

form of an asset purchase agreement marked against the Debtor's form asset purchase agreement. Houlihan Lokey and the Debtor's other professional advisors assisted the Debtor in evaluating the offer and negotiating the terms of the asset purchase agreement offer. Under Houlihan Lokey's leadership, the Debtor worked with the stalking horse to successfully negotiate certain modifications to the ground lease with Loyola University of Chicago and an asset purchase agreement with CSC (the "Stalking Horse Agreement"), which provided for the acquisition of substantially all of the Debtor's assets, the assumption of all residency agreements with certain modifications, the continued performance of all obligations owed by the Debtor to its residents pursuant to residency agreements with certain modifications and establishment of a framework for the solicitation of higher and better overbids.

c.  **Solicitation of Overbids:** Upon approval of the bid procedures by the Bankruptcy Court, Houlihan Lokey continued its efforts to market the Debtor's assets for sale. Among other things, Houlihan Lokey: (a) reengaged investors that had already been solicited as potential purchasers; (b) provided access to the data room to all qualified bidders; (c) executed confidentiality agreements with new potential bidders; (d) conducted additional management presentations and facility tours; and (e) responded to additional information requests of all interested potential bidders. As a result of these extensive marketing efforts, the Debtor received two additional bids (the "Additional Bids") by the bid deadline of April 10, 2012. Additional Bids were received from: GPA, Inc. (an affiliate of Senior Star Living) and Pearson Street Partners (an affiliate of The Prime Group)

(collectively, the "Additional Bidders"). Over the course of the next two days, Houlihan Lokey led numerous discussions with each of the Additional Bidders to clarify and attempt to address various questions and concerns surrounding the Additional Bids. Various changes were made to each of the Additional Bids to address such questions and concerns in an effort to conform the bids into a reasonably standard form. Each of the Additional Bidders was deemed to be Qualified Bidders at the auction.

    d.    **Conduct of an Auction:** As a result of a competitive auction among the three (3) qualified bidders, the gross purchase price increased from $29,500,000 plus the assumption of certain liabilities under the Stalking Horse Agreement to $53,500,000 in cash consideration plus the assumption of certain liabilities – an 81% increase in purchase price. CSC was deemed the "Successful Bidder." In close cooperation with the Debtor's other professionals, Houlihan Lokey's leadership leading up to and during the auction resulted in significant incremental value.

31.    Houlihan Lokey has rendered and continues to render substantial and valuable professional services on behalf of the Debtor that has resulted in a significant benefit to the creditors of the Debtor's estate and that are beneficial to the administration of this chapter 11 case. The above-mentioned services provided by Houlihan Lokey are unique and separate from services provided by Deloitte Financial Advisory Services LLP ("Deloitte FAS"). Deloitte FAS has been hired to serve as the Debtor's restructuring advisor – assisting the Debtor in navigating its business through the day-to-day operational requirements of a complex chapter 11 case, including assisting in (a) the financial restructuring process, including its implementation of appropriate accounting, financial reporting and operational preparations

in advance of any bankruptcy proceeding, (b) development of certain business and financial information required for filing of motions and other bankruptcy disclosures, (c) refinement of its cash management and short-term cash flow forecasting process, including the monitoring of actual cash flow versus projections, (d) preparation of various stakeholder presentations and financial reports required to support pre-petition stakeholder negotiations and coordination, (e) post-petition management of cash and cash flow reporting to the DIP Lender and pre-petition stakeholders, and (f) reviews and assessments of vendor relationships and other executory contracts.

32. Houlihan Lokey respectfully submits that its services were provided with the requisite level of skill and are being performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problems, issues and tasks addressed. Houlihan Lokey has charged its customary fees, which are reasonable based on the customary compensation charged by comparably skilled professionals in cases other than cases under this title. The amount sought in compensation is in line with awards in similar cases and is commensurate with the professional standing, ability and expertise of Houlihan Lokey and the professionals who have participated in this case. Accordingly, the compensation requested herein reflects the reasonable value of the services provided to the Debtor.

### Expense Reimbursement

33. Additionally, Houlihan Lokey respectfully submits the actual and necessary expenses incurred during the Final Application Period, for which requested reimbursement amounts to $10,417.45. Attached hereto as Exhibit D is a summary of expenses by category. During the Final Application Period, Houlihan Lokey incurred expenses in the following categories:

    a. **Airfare:** All air travel incurred for this case has been charge at coach fare price. All of the travel expenses were necessary given the working dynamics of this case.

b. **Lodging:** This category includes expenses associated with hotel stays and related expenses incurred for out-of-town meetings.

c. **Ground and Other Transportation:** This category contains all transportation expenses excluding airfare, such as taxi, airport transportation, parking, rental car charges and mileage charges. Mileage is charged, if any, when Houlihan Lokey professionals used their own cars to travel to and from meetings at the federally mandated rate.

d. **Business Meals:** Houlihan Lokey charged for working meals consumed during overtime work, while traveling or during meetings with individuals regarding the Debtor's chapter 11 case.

e. **Telephone and Data:** Expenses include all phone and internet charges related to the case at cost. Houlihan Lokey does not charge its clients for local "land line" telephone usage or facsimile charges.

f. **Delivery / Messenger / Office Expense:** Houlihan Lokey utilizes Federal Express and other courier delivery services (as necessary) when documents have to be distributed on the next or same day. This category also contains third party printing and meeting space charges (as necessary). Houlihan Lokey does not charge its clients for in-house printing service, photocopying or meeting space.

## VII. CONCLUSION

34. Notice of this Final Application has been provided to the Notice Parties (as defined in the Interim Compensation Order).

35. For all of the foregoing reasons, Houlihan Lokey believes that the fees requested in this Final Application are reasonable and reflect the value of the services provided to the Debtor's estate. The

15

out-of-pocket expenses incurred by Houlihan Lokey are charged to a client if the expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. The expense reimbursements requested herein reflect Houlihan Lokey's general internal policies with respect to out-of-pocket expense billed to the Debtors, as modified to conform to the In re UAL fee guidelines or as otherwise agreed to with the United States Trustee. Houlihan Lokey submits that all such expenses were necessarily incurred, are reasonable in amount and represent only the actual costs incurred. To the extent this Final Application does not comply in every respect with the requirements of the Guidelines, Houlihan Lokey respectfully requests a waiver for any such technical noncompliance.

36.    Houlihan Lokey reserves the right to correct, amend or supplement the Final Application until such time as final compensation and reimbursement is sought from the Debtor's estate.

WHEREFORE, Houlihan Lokey respectfully requests that the Court enter a final order, substantially in the form attached hereto as Exhibit E:

a. Allowing on a final basis and authorizing compensation for investment banking services rendered to the Debtor during the Final Application Period in the amount of $2,407,500.00 and reimbursement of expenses incurred in the amount of $10,417.45;

b. Directing the Debtor to make payment to Houlihan Lokey for all: (i) unpaid fees earned during the Final Application Period; and (ii) incurred but not yet reimbursed out-of-pocket expenses, net of any excess Expense Retainer; and,

c. Granting such other and further relief as the Court may deem proper.

June 22, 2012

Respectfully submitted,

_____
By: Andrew Turnbull
Managing Director
HOULIHAN LOKEY CAPITAL, INC.
123 N. Wacker Drive, 4th Floor
Chicago, IL 60606

INVESTMENT BANKER
FOR THE DEBTOR AND
DEBTOR IN POSSESSION