## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ------------------------------------------------------- | ) | Chapter 11 |
| In re: | ) | |
| | ) | Case No. 11-46151 |
| CWT Liquidation Company, | ) | |
| | ) | Hon. Timothy A. Barnes |
| Debtor. | ) | |
| | ) | Hearing Date:  October 20, 2015 at 10:00 a.m. |
| | ) | (prevailing Central Time) |
| ------------------------------------------------------- | ) | |

### NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on October 2, 2015, the plan administrator under the above-captioned debtor's plan of reorganization filed the *Plan Administrator's Motion for an Order (I) Granting a Final Decree and Closing the Case and (II) Terminating Noticing, Claims and Ballot Agent Services* with the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on **Tuesday, October 20, 2015, at 10:00 a.m. (prevailing Central Time)** a hearing shall take place before the Honorable Timothy A. Barnes, United States Bankruptcy Judge for the Northern District of Illinois, or any judge sitting in his stead, at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 613, Chicago, IL 60604, at which time you may appear if you deem fit.

Dated:  October 2, 2015

**DLA PIPER LLP (US)**

By: *Oksana Koltko*
Oksana Koltko (IL ARDC No. 6303739)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 368-4000
Facsimile: (312) 236-7516

-and-

Thomas R. Califano, NY Bar No. 2286144
1251 Avenue of the Americas
New York, New York 10020
Phone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Attorneys for the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

-------------------------------------------------------------------
|  | ) | Chapter 11 |
| In re: | ) | |
|  | ) | Case No. 11-46151 |
| CWT Liquidation Company, | ) | |
|  | ) | Hon. Timothy A. Barnes |
| Debtor. | ) | |
|  | ) | Hearing Date: October 20, 2015 at 10:00 a.m. |
|  | ) | (prevailing Central Time) |
|  | ) | |
-------------------------------------------------------------------

**PLAN ADMINISTRATOR'S MOTION FOR AN ORDER**
**(I) GRANTING A FINAL DECREE AND CLOSING THE CASE AND**
**(II) TERMINATING NOTICING, CLAIMS AND BALLOT AGENT SERVICES**

Pursuant to sections 105(a) and 350(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3022-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), Louis A. Robichaux, IV, as the plan administrator (the "Plan Administrator") under the *Debtor's Fifth Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 357] (the "Plan"), hereby submits this motion (the "Motion") for entry of an order (i) granting a final decree and closing the above-captioned case and (ii) terminating the services of Epiq Bankruptcy Solutions, LLC ("Epiq") rendered on behalf of the Clerk of the Court under section 156(c) of title 28 of the United States Code (the "Claims Agent Services"). In support of this Motion, the Plan Administrator respectfully states as follows:

**Background**

1. On November 14, 2011 (the "Petition Date"), The Clare at Water Tower, now known as CWT Liquidation Company NFP, then debtor and debtor-in-possession (the

"Debtor"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The factual background regarding the Debtor, including its former business operations, its capital and debt structures and the events leading to the filing of this chapter 11 case is set forth in detail in the *Declaration of Judy Amiano in Support of Chapter 11 Petition and First Day Motions of The Clare at Water Tower* [Docket No. 7] (the "Amiano Declaration"), filed on November 15, 2011 and fully incorporated herein by reference.

3.      On November 16, 2011, the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court") entered an *Order (A) Authorizing the Debtor to Mail All Notices and (B) Approving the Form of Agreement with Epiq Bankruptcy Solutions, LLC as Claims, Noticing and Solicitation Agent of the Bankruptcy Court* (the "Claims Agent Retention Order") [Docket No. 63].  The terms of Epiq's retention were set forth in the Standard Services Agreement (the "Services Agreement"), dated November 8, 2011 and effective as of that date.

4.      On April 27, 2012, the Bankruptcy Court entered (i) the *Findings of Fact, Conclusions of Law, and Order Confirming Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order") [Docket No. 384], and (ii) an order (the "Sale Order") [Docket No. 383] approving the sale of substantially all of the Debtor's assets to Chicago Senior Care, LLC (the "Purchaser") pursuant to that certain Amended and Restated Purchase and Sale Agreement, dated April 12, 2012 (as amended, the "APA").

5.      On June 30, 2012 (the "Closing Date"), the Debtor and the Purchaser consummated the transaction approved by the Sale Order, transferring substantially all of the Debtor's operating assets to the Purchaser.

6.      The Debtor's Plan became effective on July 2, 2012 (the "Effective

Date").

7.      Pursuant to the Plan and Confirmation Order, Louis A. Robichaux, IV, was appointed as Plan Administrator to liquidate the Debtor's remaining assets, administer the Plan and oversee the wind-down of the Debtor and its estate post-Effective Date.

8.      Pursuant to Section 3.7(a) of the APA, two million dollars ($2,000,000) was placed into an escrow account established pursuant to an escrow agreement between the Debtor, the Purchaser and an escrow agent, dated June 29, 2012, (the "Indemnification Escrow") for amounts potentially due to the Medicare program related to services provided to Medicare residents prior to the closing date of the APA.  The Indemnification Escrow was funded by Purchaser at closing from the purchase price due.  Pursuant to Section 3.7(b) of the APA, the Debtor and Purchaser were to jointly engage a consultant to test and assess the Debtor's documentation and billing procedures related to Debtor's participation in the Medicare program prior to the Closing Date.

9.      Polaris Group, engaged as the consultant (the "Consultant"), performed the testing required by Section 3.7(b) and issued preliminary reports.  The Purchaser and the Plan Administrator engaged in discussions regarding the Indemnification Escrow and the preliminary reports (the "Dispute") and ultimately entered into a settlement agreement dated July 13, 2015 (the "Settlement Agreement"), according to which one million five hundred and fifty thousand dollars ($1,550,000) was to be released to the Purchaser from the Indemnification Escrow and the remainder of four hundred and fifty thousand dollars ($450,000) was to be released to the Plan Administrator.

10.     On July 17, 2015, the funds from the Indemnification Escrow were released to the Purchaser and the Plan Administrator in accordance with the Settlement

Agreement.

11.     As contemplated by the Plan and Confirmation Order, all documents and agreements necessary to implement and complete the Plan were executed in accordance with the terms of the Plan and Confirmation Order.  All other motions, contested maters and other proceedings that were before the Court with respect to this chapter 11 case have been resolved.

12.     All expenses arising from the administration of this chapter 11 case, including fees due and payable under 28 U.S.C. 1930(a)(6) have been paid prior to the scheduled hearing date on this Motion.[1]

## Jurisdiction and Venue

13.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

14.     The statutory predicates for the relief requested herein are sections 105(a) and 350(a) of the Bankruptcy Code, Bankruptcy Rule 3022 and Local Rule 3022-1.

## Legal Basis for Relief Requested

15.     As described below, the Plan Administrator respectfully submits that it is appropriate to close the instant chapter 11 case and terminate Epiq's engagement with respect to the Claims Agent Services.

### A.     Final Decree Closing the Chapter 11 Case

16.     Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is

---

[1] As of the date hereof, the Plan Administrator has a credit balance with the Office of the United States Trustee for the Northern District of Illinois (the "U.S. Trustee").  After the case is closed, the Plan Administrator will request that the U.S. Trustee refund such credit balance to the Debtor's creditors in accordance with the Plan.

fully administered and the court has discharged the trustee, the court shall close the case."
11 U.S.C. § 350(a).   Bankruptcy Rule 3022 establishes procedural guidelines for closing
chapter 11 cases.  In particular, Bankruptcy Rule 3022 provides that "[a]fter an estate is fully
administered . . . the court, on its own motion or on motion of a party in interest, shall enter a
final decree closing the case."  Fed. R. Bankr. P. 3022.

17.   Neither the Bankruptcy Code nor the Bankruptcy Rules contain a
definition of the term "fully administered."  The Advisory Committee Note to Bankruptcy
Rule 3022, however, sets forth the following non-exclusive factors to be considered in
determining whether a case has been fully administered:

(1)   whether the order confirming the plan has become final;

(2)   whether deposits required by the plan have been distributed;

(3)   whether the property proposed by the plan to be transferred has
been transferred;

(4)   whether the debtor or the successor of the debtor under the plan
has assumed the business of the management of the property dealt
with by the plan;

(5)   whether payments under the plan have commenced; and

(6)   whether all motions, contested matters and adversary proceedings
have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Comm. Note (1991).

18.   Bankruptcy courts have adopted the view that "all of the factors in the
Committee Note need not be present before the Court will enter a final decree.  Instead, the
Committee Note and the factors therein merely serve as a guide in assisting the Court in its
decision to close a case."  In re Mold Makers, Inc., 124 B.R. 766, 768 (Bankr. N.D. Ill. 1990);
see also In re SLI, Inc., No. 02-12608 (WS), 2005 WL 1668396, at *2 (Bankr. D. Del. June 24,
2005) (citing Mold Makers, 124 B.R. at 768-69); Walnut Assocs. v. Saidel, 164 B.R. 487, 493

(E.D. Pa. 1994) (quoting Mold Makers, 124 B.R. at 768-69) ("[A]ll of the factors in the Committee Note need not be present before the Court will enter a final decree.").

19.     In addition to the factors set forth in the Advisory Committee Note, courts have considered whether the plan of reorganization has been substantially consummated. See, e.g., In re Gould, 437 B.R. 34, 39-40 (Bankr. D. Conn. 2010) (finding that case was fully administered for purposes of section 350(a) where plan was confirmed and its terms were substantially consummated, thus, closure of chapter 11 case was warranted); In re Johnson, 402 B.R. 851, 854-58 (Bankr. N.D. Ind. 2009) (granting debtor's motion to close chapter 11 case because the court found that plan was substantially consummated where the final confirmation order had been entered, payments to creditors had commenced and outstanding motions and contested matters had been resolved, despite the fact that the debtor had not yet completed plan payments or received a discharge); In re Gates Cmty. Chapel of Rochester, Inc., 212 B.R. 220, 224 (Bankr. W.D.N.Y. 1997) (citations omitted) (considering substantial consummation as a factor in determining whether to close a case).  Section 1101(2) of the Bankruptcy Code defines substantial consummation as follows:

> (A)     transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B)     assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C)     commencement of distribution under the plan.

11 U.S.C. § 1101(2).

20.     The Plan Administrator submits that this chapter 11 case has been fully administered within the meaning of section 350(a) of the Bankruptcy Code and that the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code,

making it appropriate for the Bankruptcy Court to enter a final decree closing this chapter 11 case.

21.     First, as stated above, the Confirmation Order was entered on April 27, 2012, and the Plan became effective on July 2, 2012.  All documents and agreements necessary to implement and complete the Plan were executed in accordance with the terms of the Plan and Confirmation Order.

22.     Second, pursuant to the Plan, on the Effective Date, all of the Debtors' assets were transferred to the Plan Administrator to be distributed in accordance with the Plan.

23.     Third, the Plan Administrator has completed substantially all distributions as provided for in the Plan.  All cash that was remaining in the Debtor's estate has been distributed by the Plan Administrator in accordance with the Plan, except for four thousand dollars ($4,000) that is being held in reserve by the Plan Administrator to pay for miscellaneous expenses associated with the dissolution of the Debtor.  The Plan Administrator will distribute any remaining funds from the reserve as soon as practicable in accordance with the Plan.  Additionally, as stated above, a credit balance exists with the U.S. Trustee.  After the case is closed, the Plan Administrator will request that the U.S. Trustee refund such credit balance to the Debtor's creditors in accordance with the Plan.  Moreover, final tax returns for the Debtor will be filed within 120 days of entry of a final decree closing this chapter 11 case.

24.     Finally, all contested matters and other proceedings that were before the Court with respect to this chapter 11 case, as well as the out-of-court Dispute related to the Indemnification Escrow, have been resolved.

25.     Accordingly, this chapter 11 case has been "fully administered" within the meaning of section 350(a) of the Bankruptcy Code.

26.     In addition to the reasons explained above, closing this case will also (a) relieve the Bankruptcy Court, the U.S. Trustee and the Plan Administrator from each of their administrative burdens with respect to this chapter 11 case, and (b) alleviate the obligation to pay quarterly fees under section 1930 of title 28 of the United States Code.  See In re A.H. Robins Co., Inc., 219 B.R. 145, 149 (Bankr. E.D. Va. 1998) (citations omitted) (finding that "the obligation to pay the UST fees terminates upon closure, dismissal, or conclusion of a Chapter 11 case, and will not be paid *ad infinitum*.").

27.     The Plan Administrator submits that the foregoing supports closing this chapter 11 case.

**B.     Status of Distributions Under the Confirmed Plan Pursuant to Local Rule 3022-1**

28.     Local Rule 3022-1 provides that the party moving to close the case shall state within the notice or motion the actual status of payments due to each class under the confirmed plan.  In compliance with Local Rule 3022-1, the following chart describes such distributions:

| Class | Type of Claim | Treatment | Status of Payments/Date(s) of Distribution |
|-------|---------------|-----------|---------------------------------------------|
| 1 | Other Priority Claims | Unimpaired | No claims have been asserted in this Class |
| 2 | Secured Tax Claims | Unimpaired | No claims have been asserted in this Class |
| 3 & 4[2] | Variable Rate Bondholder Claims (Class 3)<br><br>Fixed Rate Bondholder Claims (Class 4) | Impaired | Initial distribution of $425,000 made on November 26, 2013<br><br>Subsequent distribution of $578,521.24 made on September 25, 2015 |

---

[2] In each instance, one distribution was made to the Master Bond Trustee (as defined in the Plan) to distribute between the creditors holding Class 3 and Class 4 claims in accordance with the Plan.

| 5 | Other Secured Claims | Unimpaired | No claims have been asserted in this Class |
| 6 | Resident Claims | Impaired | Claims in this Class have been released pursuant to the Plan |
| 7 | General Unsecured Claims | Impaired | Pro rata distributions totaling $75,000 made in October 2013 |
| 8 | Subordinated 510(b) Claims | Impaired | No distribution |
| 9 | Interests | Impaired | No distribution |

## C.    Termination of Claims Agent Services

29.    In addition to the foregoing, the Plan Administrator requests that the Court relieve Epiq of its obligations to continue performing the services described in Claims Agent Retention Order and the related Services Agreement.

30.    After entry of a final decree, Epiq will return all proofs of claim, original ballots, other original paper correspondence and the official claims registry to the Court, consistent with the Claims Agent Retention Order.  Upon termination and after returning the proofs of claim, original ballots, other original paper correspondence and the official claims registry to the Court, Epiq will have no further obligations (arising out of the Claims Agent Retention Order, the Services Agreement or otherwise) to the Bankruptcy Court, the Plan Administrator or any party in interest with respect to the Claims Agent Services in this chapter 11 case.

31.    The Plan Administrator further requests that the Court authorize Epiq to delete all emails, facsimiles and other electronic transmissions received by Epiq in this chapter 11 case and destroy (i) all excess copies of notices, pleadings, plan solicitation documents, customized envelopes or other printed materials and (ii) all undeliverable and/or returned mail not previously destroyed.

32.     Should Epiq receive any mail regarding this chapter 11 case after entry of the Proposed Order, Epiq will collect and forward such mail no less frequently than monthly to the Plan Administrator.

**Notice**

33.     Notice of this Motion has been provided to:  (i) the U.S. Trustee; (ii) all creditors; and (iii) all other persons who have requested notice in the above-captioned chapter 11 case pursuant to Bankruptcy Rule 2002.   The Plan Administrator submits that, under the circumstances, no other or further notice is required.

**No Prior Request**

34.     No previous request for relief sought herein has been made to this Court or any other court.

**WHEREFORE**, the Plan Administrator respectfully requests that the Court enter an order, substantially in the form of the accompanying proposed order, granting the relief requested herein, and ordering such other and further relief as is just and proper.

*[Remainder of page is intentionally left blank]*

Dated: Chicago, Illinois
        October 2, 2015

**DLA PIPER LLP (US)**

By:  *Oksana Koltko*
        Oksana Koltko (IL ARDC No. 6303739)
        203 North LaSalle Street, Suite 1900
        Chicago, Illinois 60601
        Telephone: (312) 368-4000
        Facsimile: (312) 236-7516

        -and-

        Thomas R. Califano, NY Bar No. 2286144
        1251 Avenue of the Americas
        New York, New York 10020
        Phone:  (212) 335-4500
        Facsimile:  (212) 335-4501

        *Attorneys for the Plan Administrator*